**WESTERN COLORADO CONGRESS,
Plaintiff–Appellee and Cross–
Appellant,**

v.

**UMETCO MINERALS CORP. and Colorado Department of Health, Defendants–
Appellants and Cross–Appellees.**

Nos. 94CA1839, 94CA1936.

Colorado Court of Appeals,
Div. V.

May 2, 1996.

Don, Hiller & Galleher, P.C., David L. Hiller, Shelley B. Don, Denver, for Plaintiff–Appellee and Cross–Appellant.

Holme Roberts & Owen LLC, Henry W. Ipsen, Denver, for Defendant–Appellant and Cross–Appellee Umetco Minerals Corp.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Jerry W. Goad, Senior Assistant Attorney General, Denver, for Defendant–Appellant and Cross–Appellee Colorado Department of Health.

Opinion by Judge TAUBMAN.

This action concerns a decision by the Colorado Department of Health (CDH) (now the Colorado Department of Public Health and Environment) to grant an amended radioactive materials license to defendant, Umetco Minerals Corp., for its Uravan facility located in Montrose County, Colorado. Umetco appeals that part of the judgment of the district court reversing the final agency action of CDH in which it issued the amended license. Plaintiff, Western Colorado Congress (WCC), an organization comprised of individuals and local citizens' groups in western Colorado, cross-appeals that part of the district court judgment implicitly approving part of the radioactive materials license amendment granted to Umetco. Because we conclude that the amended license was properly granted by CDH, we affirm in part and reverse in part.

Umetco has been operating its Uravan mill under a Colorado radioactive materials license since 1968, and that license has been amended on various occasions. In the proposed amendment that is the subject of the present dispute, Umetco sought CDH approval for construction of three new waste cells at Uravan designed to receive radioactive waste from off-site sources. In its license amendment application, Umetco sought approval to dispose of two types of materials: (1) uranium mill tailings and wastes similar to the material already authorized for disposal under Umetco's existing license, and (2) radioactive tailings or waste generated by the processing of ores other than uranium or radium.

Following Umetco's submission of its initial and revised license application, CDH's Radiation Control Division prepared a preliminary license summary and preliminary license (PLS/PL) dated January 28, 1993. In this document, CDH tentatively authorized

Umetco to dispose of "516,000 dry tons (430,-000 cubic yards) of 11e(2) byproduct material and 204,000 dry tons (170,000 cubic yards) of non–11e(2) by product material, from Department-approved off-site waste sources."

The two types of materials tentatively authorized for disposal by the PLS/PL described in technical shorthand the categories of waste described in Umetco's application. First, the term "11e(2) by-product material" is derived from § 11e(2) of the Atomic Energy Act (AEA), 42 U.S.C. § 2014(e)(2) (1994) and refers to uranium mill tailings or waste produced by the milling of ore for its uranium and/or thorium content.

The second category of material authorized by the PLS/PL, "non–11e(2) by-product material," consists of radioactive tailings or wastes generated by the processing of ores other than uranium or radium. An example is vanadium, a strategic metal commonly found in uranium ore.

The PLS/PL authorized the disposal of material from off-site waste sources, as noted, and defined "off-site waste" as "those radioactive materials, currently not located at the Umetco–Uravan site … which require Department approval prior to receipt at the Umetco–Uravan site." The PLS/PL then specified that off-site waste does not include "low-level radioactive waste subject to the Rocky Mountain Low–Level Radioactive Waste Compact."

Following issuance of the PLS/PL, CDH conducted an adjudicatory hearing, and the independent hearing officer approved Umetco's license amendment request. The hearing officer found that the proposed off-site material to be accepted for disposal was substantially the same as the waste material presently located at the Uravan mill. He also concluded that the proposed license amendment comported with all applicable state regulations.

Additionally, the hearing officer rejected various arguments by WCC in opposition to the proposed license amendment. Specifically, the hearing officer found that: (1) Umetco was not required to specify in its license amendment application the source, type, volume, and regulatory characterization of any

waste that might be subject to the amended license; (2) CDH had adequately evaluated alternatives to Umetco's proposed disposal; and (3) CDH could rely on Umetco's representation that the amended license would apply only to materials found within the state of Colorado, rendering unnecessary a ruling on WCC's contention that CDH could not constitutionally prohibit importation of out-of-state waste.

Thereafter, CDH's executive director affirmed the hearing officer's initial decision in all respects. WCC then appealed that final agency action to the district court.

The district court reversed in part CDH's decision approving the amended license. It concluded that CDH had improperly authorized disposal of non–11e(2) by-product material because, in its view, CDH had erroneously failed to apply Part 14 of its licensing regulations to Umetco's application. The district court also ruled that CDH's decision with respect to non–11e(2) by-product material was not factually supported.

However, the district court entered no order regarding that part of the CDH decision granting the license amendment with respect to 11e(2) by-product materials, believing that the licensing of these materials was not in dispute.

Umetco now appeals the district court's judgment which reversed that part of the CDH license amendment with respect to non–11e(2) by-product material. WCC cross-appeals, contending that the district court erroneously believed that part of the license amendment concerning 11e(2) by-product materials was not in dispute and, further, that the license amendment with respect to such materials should not have been approved.

## I. Statutory and Regulatory Framework

Disposal of uranium and other radioactive materials is governed by a comprehensive federal-state statutory and regulatory scheme. Understanding this scheme is helpful to the resolution of issues before us in this case.

## A. Federal Provisions

At the federal level, the Nuclear Regulatory Commission, the successor agency to the Atomic Energy Commission, regulates the disposal of radioactive materials pursuant to the AEA, 42 U.S.C. § 2011, et seq. (1994). Federal regulatory jurisdiction was extended in 1978 to uranium mill tailings and waste with the enactment of the Uranium Mill Tailings Radiation Control Act (UMTRCA), 42 U.S.C. §§ 7901–7942 (1988). That statute amended the definition of "by-product material" in § 11e of the Atomic Energy Act to mean:

> (2) The tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material.

Accordingly, this statute provides the basis to regulate the materials described above as 11e(2) by-product material.

The AEA also provides for assignment of federal regulatory authority to states. *See* 42 U.S.C. § 2021 (1994). Based upon this provision, Colorado has assumed responsibility for administration of the UMTRCA program virtually since its inception. *See* 57 Fed.Reg. 48749, 48752 (October 28, 1992).

Additionally, Congress has provided for the regulation of certain radioactive waste disposal not governed by the AEA through the enactment of the Low–Level Radioactive Waste Policy Act. *See* 42 U.S.C. §§ 2021b–2021j (1994). This statute encouraged the states to enter into interstate compacts to accomplish regional storage of low-level radioactive wastes.

Those materials described as "non–11e(2) by-product materials," except for those which are low-level radioactive wastes, are therefore not subject to federal statute or regulation.

## B. State Provisions

In Colorado, regulation of radioactive materials is governed primarily by the Colorado Radiation Control Act, § 25–11–101, et seq., C.R.S. (1989 Repl.Vol. 11A). This act delegates exclusive regulatory authority over radioactive materials to CDH and designates CDH as the "radiation control agency of this state," with exclusive power or authority over radioactive materials. *See* § 25–11–103, C.R.S. (1989 Repl.Vol. 11A). Under the Act, CDH is directed to promulgate rules and regulations and to issue licenses pertaining to radioactive materials. *See* §§ 25–11–103 and 25–11–104, C.R.S. (1989 Repl.Vol. 11A).

Pursuant to this statutory authority, CDH has promulgated several hundred pages of regulations pertaining to radioactive materials and radiation controls. *See* Department of Health Regulations, 6 Code Colo. Reg. 1007–1. As pertinent here, Part 3 contains the general licensing regulations that apply to all radioactive materials not otherwise regulated; Part 14 deals with low-level radioactive wastes; and Part 18 pertains to the disposal of 11e(2) by-product material.

Colorado also controls the distribution of certain low-level radioactive materials under the Colorado Low–Level Radioactive Waste Act (LLRWA), § 24–60–2201, et seq., C.R.S. (1988 Repl.Vol. 10B). LLRWA authorized CDH to enter into an interstate compact, the Rocky Mountain Low–Level Radioactive Waste Compact (Compact), for low-level radioactive waste disposal and provides a scheme for selection of disposal sites within Colorado.

LLRWA defines "low-level radioactive waste" as: "radioactive waste", other than:

> . . . .
>
> (d) by-product material as defined in § 11e.(2) of the 'Atomic Energy Act of 1954' as amended on November 8, 1978; or
>
> (e) waste from mining, milling, smelting or similar processing of ores and mineral-bearing material primarily for minerals other than radium.

Section 24–60–2204(3), C.R.S. (1988 Repl.Vol. 10B). This definition of low-level radioactive wastes is repeated verbatim in Part 14 of the regulations. Further, Part 14 of the regulations provides that those materials exempt from Part 14 are to be regulated under Part 3.

The extent to which non–11e(2) by-product materials are governed by state statutes and regulations is central to the parties' dispute.

## II. Low–Level Radioactive Waste Regulations

■ Umetco and CDH contend that the district court erred in concluding that Part 14 of the CDH regulations pertaining to low-level radioactive waste should have applied to the licensing of the non–11e(2) by-product materials. We agree with this contention.

■ An agency decision may be set aside if, *inter alia*, it is arbitrary and capricious or is unsupported by substantial evidence. Section 24–4–106(7), C.R.S. (1988 Repl.Vol. 10A). Accordingly, a trial court cannot substitute its own judgment for that of an administrative tribunal when there is substantial evidence in the record to support the agency's decision. *Institute for Research on Social Problems v. Board of Assessment Appeals,* 748 P.2d 1346 (Colo.App.1987).

The district court here determined that CDH's issuance of the amended license was contrary to existing law and devoid of evidentiary support. The court reasoned that CDH's PLS/PL authorized Umetco to receive and dispose of non–11e(2) by-product material, and that because non–11e(2) by-product material is synonymous with low-level radioactive waste, and none of the materials listed in the PLS/PL was expressly excluded, Part 14 was applicable.

### A.

■ First, we agree with Umetco and CDH that the district court's order was contrary to law. We note that the district court erred in basing its decision on the PLS/PL because that document—tentatively authorizing the license amendment—was not a final agency action subject to judicial review. *See* § 24–4–106(2), C.R.S. (1988 Repl.Vol. 10A); *State Personnel Board v. District Court,* 637 P.2d 333 (Colo.1981). Rather, the amended license issued by CDH is the final agency action that is subject to judicial review.

As noted above, the amended license specifically authorizes Umetco to receive and dispose of specific yearly amounts of 11e(2) by-product material and non–11e(2) by-product material from off-site waste sources. Importantly, the amended license expressly defines the off-site waste as not including radioactive waste subject to the Rocky Mountain Low–Level Radioactive Waste Compact, § 24–60–2201, et seq.; C.R.S. (1988 Repl.Vol. 10B) (the Compact).

The Compact and § 24–60–2204(3), C.R.S. (1988 Repl.Vol. 10B) of the LLRWA define the term "low-level radioactive waste" by exclusion to mean radioactive waste *other than* 11e(2) by-product material and "wastes from mining, milling, smelting, or similar processing of ores and mineral-bearing material primarily for minerals other than radium."

Thus, not all non–11e(2) by-product material constitutes low-level radioactive waste, inasmuch as certain non–11e(2) materials are definitionally excepted from Part 14. Indeed, WCC concedes that the trial court erred in concluding that vanadium tailings are covered by Part 14 of the regulations. The trial court was therefore incorrect as a matter of law in determining that the non–11e(2) by-product material and low-level radioactive waste are synonymous.

Here, because CDH specifically excluded low-level radioactive waste in the amended license, Umetco can receive and dispose of only those materials that, by definition, are not low-level radioactive waste. Therefore, Part 14 of the regulations was inapplicable to the issuance of the amended license, and we conclude that the district court erred in that regard.

### B.

We also agree with Umetco and CDH that the district court erred in determining that the decision of CDH was not factually supported.

In reaching this conclusion, the district court found that very little evidence had been presented during the administrative proceedings regarding the regulatory status of the non–11e(2) materials. However, the record reveals that the term "non–11e(2) by-product materials" has been used and defined by the federal Nuclear Regulatory Commission (NRC). *See* 57 Fed.Reg. 20525 (May 13, 1992). Thus, although non–11e(2) by-product materials are not specifically regulated under

federal law, the term has at least been recognized within the industry by the NRC.

Moreover, we need not define the precise contours of non–11e(2) by-product materials because the amended license authorizes receipt and disposal only of 11e(2) by-product materials and non–11e(2) by-product materials that are not low-level radioactive wastes.

Further, the term can be understood and applied, as it is here, in the context of existing legislative and regulatory provisions, such as the LLRWA and the Compact.

The district court also found that none of the evidence presented to CDH supported the exclusion of the proposed waste from the application of Part 14, and in support of that finding, it referenced the testimony of a Umetco engineer acknowledging that some materials in the amendment application were covered by Part 14.

However, testimony was presented by a CDH official that Umetco would not be permitted to accept any low-level radioactive waste materials, regardless of what was in its application. Although we agree that certain materials were considered during the initial stages of Umetco's application that might be covered by Part 14, specific language was contained in the amendment application, in CDH's PLS/PL, and in the final amended license excluding low-level radioactive waste regulated by Part 14.

Accordingly, we conclude that the decision of CDH not to apply Part 14 to the disposal of the non–11e(2) by-product material was factually supported in the record.

### III. Alternative Grounds to Affirm

As part of this appeal, WCC presents two alternative bases for affirmance of the judgment. Although a court may affirm on grounds different than those relied upon by the trial court, *see Norwest Bank Lakewood v. GCC Partnership*, 886 P.2d 299 (Colo.App. 1994), we reject the alternatives presented here.

### A.

■ First, WCC contends that in making its decision, CDH failed to consider any alternatives to Umetco's proposed activities as required by its own regulations and, therefore, the trial court was correct in reversing that decision. We do not agree.

Department of Health Regulations § 38.8.8.1, 6 Code Colo. Reg. 1007–1, states that an application for, or an amendment to, a license shall include an environmental report to assist CDH in weighing the costs and benefits of the proposed activity, while considering available alternatives. Department of Health Regulation § 18.3.1.6, 6 Code Colo. Reg. 1007–1, further provides that: "An application for a license or to amend or renew an existing license ... shall address ... site and project alternatives."

Here, Umetco submitted an environmental report in support of its amendment request that contained not only a detailed evaluation of off-site options, but also an evaluation of alternative reclamation actions ranging from no action to various on-site disposal options. The hearing officer determined that CDH had sufficiently considered those options. WCC is therefore incorrect in asserting that Umetco failed to address any project alternatives and that CDH failed to consider them.

■ Thus, we agree with the conclusion of CDH that the requirement to consider site and project alternatives under these regulations is general, that the extent of that consideration is within the discretion of CDH, and that CDH did not abuse its discretion in adequately evaluating these alternatives.

### B.

■ WCC also urges us to affirm the district court based on the failure of CDH to consider the impact of the transportation of materials to Uravan from sites outside the state of Colorado. We decline to do so.

The regulations do not expressly contain a requirement to consider transportation impacts. However, Part 3 states generally that "the applicant shall submit all information required under these regulations and such other material as the Department may deem necessary." In addition, Criterion 2 of Appendix A to Part 18 directs CDH to take into account any factors CDH determines to be appropriate.

Here, CDH requested early in the application proceedings that Umetco revise its application to include a discussion of off-site transportation impacts. However, throughout the course of the amendment proceedings, the parties contemplated only the transportation of materials found within Colorado. Thus, although the final amended license contained no restrictions on the importation of out-of-state waste, CDH considered only the environmental, health, or safety impacts of transporting materials within Colorado.

WCC contends that because the amended license did not, and constitutionally could not, prohibit out-of-state materials, the importation of out-of-state waste by Umetco was inevitable and therefore it was error for CDH not to consider the transportation impact of such materials. We do not agree.

First, Umetco's application and the subsequent amendment proceedings considered only in-state waste; second, nothing more than speculation supports WCC's contention that Umetco will receive and dispose of out-of-state waste; and finally, Umetco stated at the adjudicatory hearing that it would seek a further amendment to its license before it would import out-of-state waste.

Thus, without addressing the merits of the constitutional question, we conclude that CDH did not err in considering only the transportation impact of waste from within Colorado.

Finally, because of this disposition, we need not address the other issues raised in the appeal.

## IV. Issues on Cross–Appeal

On cross-appeal, WCC contends that the district court erred in determining that the parties did not dispute that portion of the license amendment concerning receipt and disposal of 11e(2) by-product material. We agree with the parties that the issue was properly presented to the district court and remains in dispute. We also agree that this issue should be resolved here on appeal rather than remanded for such determination by the trial court. However, we perceive no error in that part of the amended license as it pertains to receipt and disposal of 11e(2) by-product materials.

WCC asserts in its cross-appeal that CDH erred in not adequately considering alternatives to Umetco's proposal and in not considering the transportation impact of the receipt and disposal of out-of-state materials. Because we have considered and rejected the merits of these arguments above with respect to non–11e(2) by-product materials, we will not address them again here.

■ WCC also asserts on cross-appeal that CDH erred in failing specifically to exclude from the license the disposal of 11e(2) by-product materials received from sites identified under Title I of UMTRCA. We perceive no error.

Department of Health Regulations § 18.1.3, 6 Code Colo. Reg. 1007–1, states that: "The regulations in this part do not establish procedures and criteria for the issuance of licenses for materials covered under Title I of the Uranium Mill Tailings Radiation Control Act of 1978 ... unless that program fails to accomplish remedial action."

First, this regulation does not by its terms prohibit disposal of Title I materials at facilities otherwise licensed under Part 18. It states only that the regulations in Part 18 do not govern unless "the program fails to accomplish remedial action."

Further, the amended license does not specifically authorize the receipt and disposal of Title I materials at Uravan. Nevertheless, in support of its argument, WCC relies on certain materials listed in Umetco's amendment application that could be classified as Title I materials. However, as noted previously, the amendment application is not the final agency action and does not govern our review of these proceedings.

Finally, if 11e(2) materials are later to be received and disposed at the Uravan facility, the proper regulatory authorities must determine whether such materials are proper under the amended license and if the Title I program "failed to accomplish remedial action."

Thus, we conclude that the receipt and disposal of Title I materials at the Uravan

facility is not expressly prohibited under the regulations and that CDH did not err in failing to exclude such materials in the amended license.

In sum, that portion of the district court's judgment pertaining to 11e(2) by-product material is affirmed and that portion regarding non–11e(2) by-product material is reversed.

ROTHENBERG and CASEBOLT, JJ., concur.