Suzanne A. FASING, Plaintiff–Appellee
and Cross–Appellant,

and

Gregory J. Fasing, Plaintiff–Appellee,

v.

Richard C. LaFOND, Defendant–
Appellant and Cross–
Appellee.

No. 95CA0927.

Colorado Court of Appeals,
Div. IV.

Jan. 30, 1997.

Rehearing Denied March 27, 1997.

Certiorari Denied Oct. 20, 1997.

Marc P. Mishkin, Denver, for Plaintiff–Appellee and Cross–Appellant.

Fasing Law Firm P.C., Gregory J. Fasing, Denver, for Plaintiff–Appellee.

Andrew T. Brake, P.C., Andrew T. Brake, Lee T. Judd, Denver, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge DAVIDSON.

In this dispute arising from a failed contingent fee agreement, defendant, Richard C. LaFond, appeals from a judgment of the trial court dismissing, pursuant to C.R.C.P 12(b)(5), his counterclaims for recovery of contingent fees based on a theory of promissory estoppel, and for damages for intentional interference with contract, civil conspiracy, and fraudulent misrepresentation against plaintiffs, Suzanne A. Fasing, and her husband, Gregory J. Fasing (husband). Fasing cross-appeals from the entry of a judgment against her, after a bench trial, for attorney fees owed to defendant and from the dismissal of her claim against defendant for breach of fiduciary duty. Both parties challenge the trial court's denial of attorney fees and Fasing also claims error in regard to a denial of costs and the calculation of an award of prejudgment interest. We affirm in part, reverse in part, and remand with directions.

In 1991, while employed with the Colorado Public Utilities Commission, Fasing sought legal help in her attempt to avoid termination from her job. She orally agreed with defendant that he would provide legal assistance for $100 per hour, which was a reduction from his usual hourly rate of $150 per hour. By their agreement, Fasing, an attorney, would do much of the legal work on the case. Husband, also an attorney, would provide additional legal help.

Fasing was terminated from her job in November 1991. From October 1991 until March 1992, at which point it had become apparent that negotiations for her reinstatement were going to be unsuccessful, defendant billed, and Fasing paid, $100 per hour for defendant's legal work.

By defendant's account, on March 25, 1992, plaintiffs and defendant discussed the terms under which defendant would represent Fasing should the case go to trial. Defendant claimed that Fasing had agreed to a reduced contingent fee arrangement of 25% of any pre-trial settlement or 33.33% if the case proceeded to trial, with Fasing and husband to provide much of the legal research and drafting.

Defendant drafted a contingent fee agreement, gave it to Fasing, and ceased hourly billing. Fasing, however, did not sign the agreement, nor, consequently, did defendant forward a duplicate copy of the signed agreement to her within ten days. Instead, Fasing claimed that she had not agreed to a contingent fee agreement, and that their agreement was to continue the $100 per hour arrangement.

In November 1992, the underlying case settled, and defendant received a check for $210,000. When defendant sought to retain a 25% share, plaintiffs filed suit, seeking a declaratory judgment that Fasing had not entered into a contingent fee agreement with defendant and alleging, *inter alia*, breach of fiduciary duty against defendant for his assertion that a contingent fee agreement existed and for his refusal to turn over settlement proceeds. The disputed portion of the settlement—$52,500—was placed in a money market fund pending resolution of the dispute.

Defendant counterclaimed, contending that, based on representations made by plaintiffs that the agreement was in place, the terms of the contingent fee agreement should be enforced on a theory of promissory estoppel. Additionally, defendant raised claims of intentional interference with contract, civil conspiracy, and fraudulent misrepresentation, alleging that plaintiffs had attempted to mislead him as to the enforceability of the contingent fee contract.

Before trial, with the assent of all parties, and in an effort to streamline the proceedings, the court held an off-the-record *in limine* hearing on a number of issues. Apparently, after hearing limited testimony and argument, the court determined as a matter of law that, because defendant had not complied with the Rules Governing Contingent Fees, C.R.C.P. Chapter 23.3, no contingent fee agreement existed. Further, the court determined that defendant's claims of promissory estoppel, fraudulent misrepresentation, civil conspiracy, and intentional interference with contract constituted impermissible attempts to evade the public policy behind the contingent fee agreement rules. The court also dismissed Fasing's breach of fiduciary duty claim.

Subsequently, after a bench trial, the court found that an express contract, under the terms of which Fasing would pay defendant $100 per hour, governed throughout defendant's representation, that defendant had worked 180 hours on her case, and that Fasing therefore owed defendant $18,000. The court further determined that the existence of an express agreement precluded a *quantum meruit* recovery.

## I.

Defendant contends that the trial court improperly dismissed his counterclaim seeking to enforce the terms of an otherwise invalid contingent fee agreement. Defendant further contends that the court improperly dismissed his counterclaims seeking damages for fraudulent misrepresentation, civil conspiracy, and intentional interference with contract. We disagree.

## A.

Defendant does not challenge the trial court's determination that no valid contingent fee agreement existed. Nor does he claim that he was in substantial compliance with the Rules Governing Contingent Fees (rules). He asserts, however, that the trial court erred in dismissing, on public policy grounds, his counterclaim requesting that the terms of the contingent fee agreement be enforced on a theory of promissory estoppel.

The rules are set forth in C.R.C.P. Chapter 23.3, and include the requirement that:

Each contingent fee agreement shall be in writing in duplicate. Each duplicate copy shall be signed both by the attorney and by each client. One signed duplicate copy shall be mailed or delivered to each client within ten days after the making of the agreement.

C.R.C.P ch. 23.3, Rule 4(b).

The rules further provide:

No contingent fee agreement shall be enforceable by the involved attorney unless there has been substantial compliance with all of the provisions of this rule.

C.R.C.P ch. 23.3, Rule 6.

By these rules, the burden to ensure the validity of a contingent fee agreement is placed squarely and solely upon the attorney. Placing this burden on the lawyer clearly reflects the overriding policy in attorney-client relations to hold the attorney responsible for advising the client of the nature of the relationship. *See, e.g.*, 2 ABA/BNA, *Lawyers' Manual on Professional Conduct* 41:313 (1994) ("Whoever the client and whatever the subject of the representation, a lawyer should be guided by this rule: *Make sure the client understands the fee arrangement and agrees to it.*" (emphasis in original)). *See also Beeson v. Industrial Claim Appeals Office*, 942 P.2d 1314 (Colo.App. No. 96CA0884, January 9, 1997).

The rules' strict requirements for the creation of a valid contingent fee agreement and the provision for the unenforceability of invalid contingent fee arrangements similarly reflect the recognition that contingent fee agreements, while necessary, are to be carefully regulated. *See* 2 ABA/BNA, *Lawyers'*

*Manual on Professional Conduct* 41:904–06 (1994).

Defendant contends that, because the public policy underlying the rules is to protect unsophisticated clients—and Fasing is a knowledgeable attorney—the rules do not apply here. Thus, he argues, because plaintiffs' conduct led him to believe that there was a contingent fee contract in place, he should be permitted to recover a 25% share of the settlement.

■ This argument notwithstanding, we agree with the trial court that the rules and their underlying policy preclude defendant's claim. By their plain language, the rules impose on an attorney the absolute burden to ensure that a proper contingent fee agreement is in place. The rules allow for no exception for instances in which, as alleged here, an attorney does not comply with the requirements of the rules but simply relies on the client's representation.

Nor do the rules provide for different treatment when the client is an attorney. This is because an attorney seeks legal counsel as a client, not as an attorney. As the trial court correctly noted, as it pertains to his or her own case, an attorney may lack the objectivity and professionalism that he or she otherwise would have; in that regard, then, an attorney is no less deserving of the rules' protection.

Here, the intent of the rules would be defeated if collateral methods of enforcing an otherwise invalid contingent fee agreement were allowed. Specifically, permitting defendant to assert a promissory estoppel claim would, in effect, allow the terms of the contingent fee agreement to be enforced against Fasing, despite the fact that defendant failed to secure a proper agreement, and despite the rules' express preclusion of enforceability of a contingent fee agreement that is not in compliance with the rules. Simply stated, if promissory estoppel were allowed in this context, an attorney would, in effect, no longer be required to comply with the rules in order to recover a contingent fee.

**B.**

On the same public policy grounds—that to allow such claims would impermissibly sidestep the contingent fee rules—the trial court also dismissed defendant's remaining claims for damages for fraudulent misrepresentation, civil conspiracy, and intentional interference with contract. However, by this reasoning, the trial court not only concluded that the particular damages claims brought here must be barred, but necessarily implied that *any* claim for damages sought by an attorney in the context of a failed contingent fee agreement is precluded. In that regard, the reach of the court's conclusion is overly broad. However, we need not decide whether the grounds for the trial court's ruling were correct because we can affirm the dismissal of defendant's damages claims on a narrower basis. *See Western Colorado Congress v. Umetco Minerals Corp.,* 919 P.2d 887 (Colo.App.1996) (a court may affirm on grounds different from those relied upon by the trial court).

■ Specifically, the claim of fraudulent misrepresentation was properly dismissed as a matter of law because an element of that claim is reasonable reliance on the alleged misrepresentations. *See Soneff v. Harlan,* 712 P.2d 1084 (Colo.App.1985). Here, as discussed, because it was defendant who was solely responsible to ensure that the agreement was valid, it simply was not reasonable as a matter of law for him to rely on any representations by plaintiffs that a contingent fee agreement existed.

Consequently, the claim for civil conspiracy also was properly dismissed because that claim was premised on the claim for fraudulent misrepresentation. *See Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486 (Colo.1989) (an element of a civil conspiracy claim is the existence of an overt unlawful act).

■ And, the claim for intentional interference with contract was properly dismissed because, as determined, no valid contingent fee agreement existed between Fasing and defendant. *See Grimm Construction Co. v. Denver Board of Water Commissioners,* 835 P.2d 599 (Colo.App.1992) (an element of the

tort of intentional interference with contract is the existence of a valid contract).

## II.

As previously noted, the trial court held an off-the-record *in limine* hearing prior to trial and with the parties' consent. As far as we can ascertain, the court initially ruled at this hearing that there was an express contract between defendant and Fasing in effect throughout the entire course of defendant's representation that precluded defendant's recovery under *quantum meruit*. It also dismissed Fasing's claim for breach of fiduciary duty. Thus, the court determined that it would limit testimony at trial to the issue of the number of hours that properly could be charged to plaintiff at the agreed-upon rate of $100 per hour.

Later, during the trial, however, the court noted that it would reconsider its *in limine* rulings in light of the evidence submitted.

Finally, at the close of trial, the court specifically noted that it would review its initial determinations, and, if it decided that additional testimony was needed on any issue, it would so inform the parties. The court, however, did not request further evidence. Instead, in a written order following trial, it reaffirmed its prior findings and orders.

Defendant contends that the trial court improperly dismissed his claim for recovery under *quantum meruit*, and, on crossappeal, Fasing contends that the court improperly dismissed her claim for breach of fiduciary duty. Because the particular procedural idiosyncracies of this case similarly affect both of these arguments, we will address them together.

■ Furthermore, because there is no transcript before us of the evidence presented at the *in limine* hearing, we must assume that the findings of fact and conclusions of law made in that hearing are supported by the evidence. *See Furer v. Allied Steel Co.,* 174 Colo. 171, 483 P.2d 212 (1971). Moreover, factual findings of a trial court will not be disturbed on appeal unless clearly erroneous and unsupported by the record. *Jackson v. Moore,* 883 P.2d 622 (Colo.App.1994).

### A.

Defendant contends that the court erred in dismissing his alternative claim for recovery under principles of *quantum meruit* because the court's determination that an express contract—under which Fasing was to pay defendant $100 per hour—was in effect after March 25, 1992, was unsupported by the record. We disagree.

■ The question of the existence of a contract is one for the finder of fact. *Cogswell & Wehrle v. Nicholson,* 780 P.2d 37 (Colo.App.1989).

■ Here, even disregarding testimony that may have been presented at the *in limine* hearing, based on the limited record before us, we find evidentiary support for the trial court's determination that an express contract existed. For example, although the evidence at trial was disputed, Fasing specifically testified that the contract was to be in effect throughout the course of defendant's representation and that there was no attempt to change the terms of that contract.

### B.

Fasing's claim for breach of fiduciary duty is based on allegations that defendant did not turn over the undisputed portion of the settlement proceeds in a timely manner, sought to recover an excessive attorney fee, threatened to withhold the undisputed portion of the settlement check, and padded bills when he reconstructed his hourly bills.

However, again in addition to whatever evidence may have been presented at the *in limine* hearing, the record indicates that, during the course of the trial, the court heard testimony pertaining to this claim. And, at the close of trial, although Fasing asked, and was allowed by the court, to make a further offer of proof, she did not do so. The record further indicates that, as it pertains to this claim, the trial court considered, and rejected, plaintiffs' version of the facts.

■ Although disputed, there is evidence in the record that Fasing and husband did not respond to defendant's contingent fee

offer in a timely manner, acted inconsistently with an hourly fee arrangement, and that defendant acted in good faith in reconstructing his hourly work. Hence, we may not disturb the trial court's determination that there was no breach of fiduciary duty. *See Jackson v. Moore, supra.*

### III.

■ In her cross-appeal, Fasing also contends that the trial court erred in its determination that defendant was entitled to compensation of $18,000 for 180 hours of work. Again, because the findings of the trial court supporting this determination have record support, we reject any claim of error.

Here, defendant presented evidence that he had spent 237.5 hours on Fasing's behalf. He introduced detailed records of the work he had done. Witnesses, including opposing counsel from the underlying case, testified to defendant's knowledge, competence, and professionalism in dealing with the case.

Fasing contends that the trial court ignored unrebutted testimony that some of the hours were incorrectly billed. To the contrary, the trial court specifically noted that, in general, it found defendant's testimony to be convincing, and that it would grant defendant some leeway because he had been forced to reconstruct from memory the hours he had expended in defense of plaintiff, in part because of Fasing's failure to inform him that she did not agree to the contingent fee agreement.

### IV.

Both defendant and Fasing dispute the trial court's refusal to award them attorney fees. We perceive no error.

Under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A), a trial court may award reasonable attorney fees if it determines that an action lacked substantial justification. A claim lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." Section 13–17–102(4), C.R.S. (1987 Repl.Vol. 6A).

■ A claim is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim or defense, and it is not a legitimate attempt to establish a new theory of law, or a good-faith effort to extend, modify, or reverse existing law. A claim is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo. 1984).

■ A trial court's determination whether attorney fees will be awarded, however, is discretionary and will not be disturbed on appeal if the ruling is supported by the evidence. *Haney v. City Court,* 779 P.2d 1312 (Colo.1989).

#### A.

We reject defendant's contention that the trial court erred in refusing to impose sanctions on husband on the theory that husband's claims were frivolous.

The record here indicates that husband was a named payee of the settlement draft received from the state, was a signatory on the money market account into which the disputed fees were deposited, and believed that he was a necessary party to the action. It also indicates that husband voluntarily abandoned his claim during the pre-trial *in limine* conference at which the court limited the scope of the proceedings.

■ Thus, the trial court acted within its discretion when it denied defendant's motion for attorney fees on the ground that a good faith basis existed for husband to be included initially as a party to the fee dispute between Fasing and defendant. *See* § 13–17–102(5), C.R.S. (1987 Repl.Vol. 6A) ("No attorney fees shall be assessed if, after filing suit, a voluntary dismissal is filed as to any claim or action within a reasonable time after the attorney or party filing the dismissal knew, or reasonably should have known, that he would not prevail on said claim or action.").

#### B.

We also reject Fasing's contention that defendant's claims against her were ground-

less and that, thus, the trial erred in denying her motion for attorney fees.

██ As noted, the record here indicates that Fasing, who was a sophisticated attorney, failed to reject in a timely manner the contingent fee contract proposed by defendant. Moreover, the record contains significant testimony that both plaintiffs' actions were consistent with a contingent fee contract. We will not, therefore, disturb the trial court's determination that, even though the contingent fee agreement was eventually determined to be unenforceable, defendant's attempts to enforce it did not merit an award of attorney fees.

### V.

██ We do agree with Fasing, however, that her motion for an award of costs was improperly denied.

Pursuant to § 13–17–202, C.R.S. (1996 Cum.Supp.), a defendant is entitled to an award of costs when a plaintiff rejects an offer of settlement received more than 10 days before trial and recovers, at trial, less than that amount.

Here, Fasing and husband jointly offered to settle all of defendant's counterclaims against them for $25,000 and the trial court eventually awarded defendant $18,000 on those counterclaims. Although the circumstances appeared to support an award of actual costs, the trial court reasoned that, because Fasing and husband had tendered the settlement offer together and the judgment was against Fasing only, the judgment could not be measured against the settlement offer for the purpose of an award of costs pursuant to § 13–17–202.

Under these circumstances, however, it is immaterial that no judgment was entered against husband. Here, defendant counterclaimed not only for fees allegedly due under his contract with Fasing, but also raised claims against Fasing and husband for intentional interference with contract, civil conspiracy, and fraudulent misrepresentation. It was on the basis of potential liability for all of the claims asserted against them that Fasing and husband offered to settle.

Moreover, to the extent that the trial court relied on *Taylor v. Clark*, 883 P.2d 569 (Colo. App.1994), we note that the analysis in that case does not apply to the facts here. In *Taylor*, a division of this court determined that an unapportioned offer made to multiple plaintiffs does not invoke the costshifting provision of § 13–17–202 because, under such circumstances, individual plaintiffs cannot independently weigh the benefits of accepting the offer.

Here, in contrast, the joint offer was made to a single defendant, who was capable of weighing the offer. Thus, when defendant refused the offer, he alone bore the risk that his recovery on all of the claims against Fasing and husband would be less than the settlement offer.

### VI.

Fasing contends that the trial court did not properly address her request for prejudgment interest. We agree in part.

Section 5–12–102(1), C.R.S. (1992 Repl.Vol. 2) provides that:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

██ Section 5–12–102 is to be liberally construed to permit recovery of prejudgment interest on money or property wrongfully withheld. *Westfield Development Co. v. Rifle Investment Associates*, 786 P.2d 1112 (Colo.1990). Permitting the prevailing party to recover prejudgment interest under § 5–12–102 compensates the prevailing party for the loss of money or property to which he or she is otherwise entitled and thereby fur-

thers the legislative purpose of § 5–12–102. Thus, under the "wrongfully withheld" language of the statute, the prevailing party is not required to establish tortious conduct on the part of the losing party to recover prejudgment interest. *See Mesa Sand & Gravel v. Landfill, Inc.,* 776 P.2d 362 (Colo.1989).

■ We reject Fasing's argument that she merits an award of interest on the undisputed portion of the settlement funds—$192,-000—because defendant did not immediately turn this portion of the proceeds over to her. We note that the trial court specifically found that the delay was "so brief that it is not unreasonable for a diligent attorney to take such time to transfer funds collected through a judgment to his client," and we will not disturb this determination.

As it concerns the disputed portion of the settlement funds, however, as noted, $52,500 had been placed in an money market account pending the outcome of the trial, apparently to comply with the Rules of Professional Conduct. *See* Colorado Rules of Professional Conduct Rule 1.5. At the close of trial, the court divided the interest generated by the disputed funds proportionately, with Fasing receiving 65.7% of the interest based on her recovery of $34,500 at trial.

In post-trial motions, Fasing, in passing, claimed that the interest on the $34,500 should have been awarded at the statutory rate of eight percent. However, the trial court did not address this issue. Accordingly, on remand, the court should determine, in accordance with § 5–12–102(1), the proper amount of prejudgment interest.

The judgment and orders are affirmed, except as to the denial of costs to Fasing and the request for prejudgment interest on the $34,500. Those orders are reversed, and the cause is remanded to the trial court for a determination of these issues.

NEY and CASEBOLT, JJ., concur.