**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TIMOTHY C. HOILES,

      Plaintiff-Counterlaim-
      Defendant-Appellee,

v.

JOSEPH M. ALIOTO,

      Defendant-Counterclaim-
      Plaintiff-Appellant.

No. 05-1376

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 04-CV-00438 PSF-OES)**

---

Ronald S. Rauchberg, Proskauer Rose LLP, New York, New York (Norman
Brownstein, Timothy R. Beyer, Richard P. Barkley, Josephine Sandler,
Brownstein Hyatt & Farber, P.C., Denver, Colorado, Ian L. Saffer and Chad King,
Townsend & Townsend & Crew, LLP, Denver, Colorado, Scott L. Levin, Fisher,
Sweetbaum & Levin, P.C., Denver, Colorado, Elise A. Yablonski, Proskauer Rose
LLP, New York, New York, Daniel Rees Shulman, Gray Plaint, Mooty, Motty &
Bennett, P.A., Minneapolis, Minnesota, Maxwell M. Blecher, John E. Andrews,
Blecher & Collins, P.C., Los Angeles, California, with him on the briefs), for
Defendant-Counterclaim-Plaintiff-Appellant.

E. Glen Johnson, Kelly Hart & Hallman LLP, Fort Worth, Texas (Bart A. Rue,
Frank P. Greenhaw IV, Kelly Hart & Hallman LLP, Fort Worth, Texas, Kenneth
B. Siegel, Sherman & Howard, L.L.C., Denver, Colorado, with him on the brief),
for Plaintiff-Counterclaim-Defendant-Appellee.

Before **MURPHY**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I. Introduction

This appeal arises out of a contingent fee agreement (the "Fee Agreement") entered into by Plaintiff-Appellee Timothy Hoiles, a resident of Colorado, and Defendant-Appellant Joseph Alioto, an attorney licensed to practice law in California. Hoiles hired Alioto to assist him in selling stock he owned in a private, family-owned media company, Freedom Communications, Inc. ("Freedom"). Approximately two years after the parties entered into the Fee Agreement, Freedom was recapitalized, enabling Hoiles to exchange his shares in the company for cash. Hoiles subsequently filed suit seeking a declaratory judgment that Alioto was not entitled to a contingent fee based on the selling price of the stock. Alioto counterclaimed, asserting breach of contract, unjust enrichment, fraud, and negligent misrepresentation. The United States District Court for the District of Colorado determined Colorado law governed all issues in the case and that the Fee Agreement was unenforceable under Colorado law. The district court also dismissed Alioto's fraud and negligent misrepresentation claims. The case proceeded to trial, and the jury found in favor of Alioto on his unjust enrichment claim. Alioto challenges several of the district court's rulings

on appeal. We assert jurisdiction pursuant to 28 U.S.C. § 1291. Because the district court erred in applying Colorado law to determine the validity of the Fee Agreement, we **reverse** the district court's dismissal of Alioto's breach of contract claim. We **remand** with instructions for the district court to determine whether the Fee Agreement is enforceable under California law. We also **reverse** the district court's dismissal of Alioto's fraud and negligent misrepresentation claims.

## II. Background

In 2001, Freedom was a closely-held media conglomerate owning various newspapers, magazines, and broadcast television stations throughout the country. Timothy Hoiles, the grandson of Freedom's founder, owned 511,221 shares in the company. Hoiles' ex-wife and two daughters (the "Davidson Defendants") owned a total of 155,740.5 shares. Hoiles' and the Davidson Defendants' shares represented approximately 8.6% of the outstanding shares of Freedom; the remaining shares were owned by other descendants of Hoiles' grandfather. Hoiles believed mismanagement of the company and family shareholder disputes were damaging the value of Freedom's stock. Therefore, he hired a consultant, Joseph Barletta, to develop a plan to improve Freedom's operations so Hoiles could sell his shares at a fair price and exit the company. Hoiles' relatives, however, were unwilling to pay what Hoiles considered a fair price and outside buyers were reluctant to purchase a minority interest in a family-owned company.

At Hoiles' direction, Barletta contacted Joseph Alioto, an attorney licensed to practice law in California, about the possibility of providing legal representation on a contingent fee basis. Hoiles subsequently traveled from his home in Colorado to meet with Alioto in California. The parties dispute the substance of their conversation. According to Hoiles, the parties discussed pursuing a lawsuit against Freedom shareholders to force the purchase of Hoiles' stock. Alioto claims Hoiles wanted him to take any action that was necessary, including but not limited to filing a lawsuit, to force the purchase of Hoiles' and the Davidson Defendants' interest in Freedom. At the end of the meeting, the parties reached an oral agreement whereby Alioto would represent Hoiles on a contingent fee basis. Hoiles paid a $500,000 retainer and advanced Alioto $100,000 for expenses and costs.

Several weeks after the meeting, Alioto faxed a letter to Hoiles in Colorado, memorializing the terms of the legal representation. The letter indicated Alioto's firm would represent Hoiles in the "Freedom Communications matter." It provided Alioto was to receive "[f]ifteen percent (15%) of anything recovered before the filing of a complaint; 20% of anything recovered after the filing of a complaint but before the commencement of the trial; and 25% of anything recovered after the commencement of the trial." If Hoiles withdrew from or dismissed the case, or refused to settle against Alioto's recommendation, he was obligated to pay a reasonable hourly rate of $1000 for Alioto's time and

$500 for co-counsel's time. The Fee Agreement also required Hoiles to pay all out-of-pocket and litigation expenses. Hoiles signed the Fee Agreement in Colorado approximately six months after receiving it.

Two years later, Freedom entered into a recapitalization agreement with Blackstone/Providence Merger Corp. The cause of the recapitalization is disputed. Alioto contends the recapitalization of Freedom was instigated by the following actions on his part: (1) his drafting of, and threatening to file, a complaint against Freedom shareholders; and (2) his hiring of Christopher Shaw, an English newspaper broker, to generate market interest in the sale of Freedom. Hoiles, on the other hand, claims Alioto's contribution to the recapitalization was minimal. Instead, he contends the recapitalization was the result of an independent effort by shareholders to restructure the ownership of Freedom. Whatever its cause, the recapitalization enabled all Freedom shareholders to exchange their shares for cash or shares in a newly-formed corporation. Hoiles and the Davidson Defendants elected the cash option and received $212.71 per share, a total of $141,869,380.67.

After the recapitalization, Hoiles asked Alioto to submit a billing statement for his services at $1000 per hour in accordance with the Fee Agreement. Alioto responded by demanding a $28.4 million contingent fee. Hoiles subsequently filed suit in Colorado state court seeking, *inter alia*, a declaration that Alioto was not entitled to a contingent fee. Alioto removed the case to federal district court

in Colorado based on diversity, and then filed his own suit against Hoiles and the Davidson Defendants in California state court. Alioto's complaint asserted claims for breach of contract, unjust enrichment, fraud, and negligent misrepresentation. Hoiles removed Alioto's California state court action to federal district court in California. The parties then filed dueling motions to dismiss for lack of personal jurisdiction, Alioto in the Colorado case and Hoiles in the California case. Each motion alternatively asked that the venue be transferred to the other federal district court. The Colorado federal district court denied Alioto's motion, and the California federal district court transferred Alioto's suit to Colorado. The two cases were consolidated in the United States District Court for the District of Colorado.

Alioto subsequently filed counterclaims in Colorado federal district court that mirrored his claims in his original California state court action. Specifically, he alleged Hoiles and the Davidson Defendants breached the Fee Agreement by failing to pay him fifteen percent of the amount they received from the sale of their Freedom shares. In the event the Fee Agreement was deemed unenforceable, Alioto asserted Hoiles and the Davidson Defendants had been unjustly enriched by his efforts. Finally, if it was determined Hoiles lacked authority to represent the Davidson Defendants' shares, Alioto claimed Hoiles misrepresented this fact and was therefore obligated to pay Alioto's contingent fee with respect to the Davidson Defendants' shares.

The district court dismissed all of Alioto's claims against the Davidson Defendants, and Alioto does not appeal this ruling. The district court also dismissed Alioto's breach of contract, fraud, and negligent misrepresentation claims against Hoiles. Applying Colorado's conflict of law rules, the district court determined Colorado law governed all issues in the case. The district court further determined, as a matter of law, that the Fee Agreement did not substantially comply with Colorado's rules governing contingent fee agreements. *See* Colo. R. Governing Contingent Fees ch. 23.3. Thus, the Fee Agreement was deemed unenforceable, and Alioto's breach of contract claim was dismissed. The district court also dismissed Alioto's fraud and negligent misrepresentation claims stating, "[t]his is not going to be a tort case." The case proceeded to trial on the issue of whether Alioto was entitled to quantum meruit.[1] The jury returned a verdict in favor of Alioto for $1,150,000, which the district court reduced by the $500,000 retainer Hoiles had previously paid.

## III. Discussion

### A. Choice of Law for Determining the Validity of the Fee Agreement

Alioto argues the district court erred in applying Colorado law to determine whether the Fee Agreement was enforceable; he contends California law should

---

[1]Hoiles' claim for reimbursement of excessive and unreasonable expenses paid to Alioto was also tried. The district court, however, granted judgement as a matter of law for Alioto on this claim at the close of all the evidence.

govern the issue.  We review choice of law determinations *de novo*.  *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001).  The underlying factual determinations of the district court, however, are reviewed for clear error.  *Id*.

Because the Fee Agreement does not contain a choice of law provision, the district court was required to apply the choice of law principles of the state in which it sits, i.e., Colorado.[2]  *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003).  Colorado has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws ("Restatement") for resolving conflict of laws questions in contract cases.  *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979).  This approach requires courts to apply the law of the state which, with respect to the particular issue in dispute, has the most significant relationship to the transaction and the parties.  Restatement (Second) of Conflict of Laws § 188(1) (1971).  The state with the most significant relationship is determined by considering the following factors:

> (a) the needs of the interstate and international systems,

---

[2]Neither party challenges the district court's decision to apply Colorado's choice of law principles in determining which state's substantive law governs the parties' claims.  *Cf. Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001) (noting, "when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court" unless the transferor court lacks personal jurisdiction).

(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*Id*. §§ 6(2), 188(1). In evaluating these factors courts take into account the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id*. § 188(2).

The first factor—the needs of the interstate and international systems—seeks "to further harmonious relations between states and to facilitate commercial intercourse between them." *Id*. § 6 cmt. d. This factor favors the application of California law in this case. Alioto did not solicit business in Colorado. Instead, Hoiles traveled to California to retain a lawyer licensed to practice law in California. The majority of the legal services rendered pursuant to the Fee Agreement were performed in California. Strategy meetings and telephone conferences took place or were arranged from California. Part of Alioto's representation entailed consideration of a possible lawsuit against Freedom shareholders. Although suit was never filed, Alioto drafted a complaint to be filed in California state court that alleged violations of a California antitrust

statute. The majority of shareholders named in the complaint were California residents.

Hoiles nevertheless contends a significant portion of services were also performed in Colorado. He argues Alioto's representation strategy required everything to come out of Hoiles' office in Colorado to ensure the interface was between Hoiles and Freedom, not Hoiles' attorneys and Freedom. To this end, Alioto regularly dictated letters to Hoiles' staff in Colorado for them to prepare and mail. Hoiles notes he also performed substantial background research and gathered documents in Colorado. Although Hoiles and his staff did substantial work in Colorado, the Fee Agreement at issue here was a contract for the rendition of Alioto's legal services. Therefore, performance of the Fee Agreement occurred largely in California where Alioto dictated the letters to Hoiles' staff and provided other legal advice. Legal services were rendered in Colorado on only one occasion: a member of Alioto's legal team traveled to Hoiles' office in Colorado for one day to review documents. Alioto himself never went to Colorado. Thus, significant services were not performed in Colorado.[3]

_____

[3]Although the majority of services were performed in California, the Fee Agreement did not explicitly require services to be performed in California. We therefore decline to rely on § 196 of the Restatement to resolve this dispute. Section 196 applies to contracts for the rendition of services; it creates a rebuttable presumption requiring application of the law of the state where the contract requires the services to be rendered unless some other state has a more significant relationship to the transaction and the parties. Restatement (Second) of Conflict of Laws § 196 (1971). The presumption only applies, however, when

-10-

Applying Colorado law under these circumstances would likely impede the interstate practice of law thereby creating discordant relations between states. An attorney who is licensed to practice law only in California, does not travel outside California to solicit business, and performs legal services mainly in California is not likely to enter into attorney-client relationships with citizens from other states if he is required to conform to each state's unique contingent fee agreement requirements merely because his client is a resident of another state. The needs of the interstate system therefore favor the application of California law here.

The second and third factors consider and compare the policies of states having an interest in the dispute. Restatement (Second) of Conflict of Laws § 6 cmts. e, f. Here, both Colorado and California have some interest in the validity of the Fee Agreement because the agreement was negotiated in California and executed in Colorado by citizens of each state.[4] Hoiles contends Colorado's

the contract expressly states where services are to be performed or the place of performance can be inferred from the contract's terms, the nature of the services involved, or other circumstances. *Id*. § 196 cmt. a. The Fee Agreement does not indicate where Alioto's services were to be rendered. Moreover, the district court did not determine whether the anticipated place of performance could be inferred from the contract's terms or other circumstances. Because it is not necessary for us to decide this question of fact in the first instance to resolve this case, we decline to do so.

[4]The terms of the Fee Agreement were negotiated in California during Hoiles' and Alioto's initial meeting. At this meeting, the parties reached an oral agreement that Alioto subsequently reduced to writing. Because the written agreement was executed by Hoiles in Colorado, the place of contracting for purposes of applying the Restatement is Colorado. *See* Restatement (Second) of Conflict of Laws § 188 cmt. e (indicating the place of contracting is the place

interest is more compelling than California's because of Colorado's need to protect its citizens who enter into contingent fee agreements. Colorado's interest in protecting its citizens is attenuated in this case, however, because Hoiles traveled outside of Colorado to solicit representation by an attorney who resides in, and is licensed to practice law in, California. Colorado's interest is further diluted because California also has enacted statutes to protect clients, regardless of their state of residence, who enter into contingent fee agreements with attorneys licensed to practice law in California. Cal. Bus. & Prof. Code § 6147; *see also Alderman v. Hamilton*, 252 Cal. Rptr. 845, 847–48 (Cal. Ct. App. 1988). Moreover, California has an interest in enforcing these rules against attorneys licensed to practice law in California. California's interest is especially compelling where, as here, the attorney does not leave the state to solicit business and performs the majority of the services required by the agreement in California. Colorado, on the other hand, has no significant interest in enforcing its rules regulating contingent fee agreements against attorneys who are not licensed to practice law in Colorado, do not solicit business in Colorado, and do not perform legal services in Colorado. *See Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) (noting "States have a compelling interest in the practice of professions *within their boundaries*" (emphasis added)); *Int'l Tele-Marine Corp. v. Malone &*

___

where, under the forum's rules of offer and acceptance, the last act necessary to give the contract binding effect occurred).

-12-

*Assocs., Inc.*, 845 F. Supp. 1427, 1431 (D. Colo. 1994) (concluding Colorado's interest in regulating attorneys licensed and practicing in Colorado is greater than Florida's interest when no legal services were performed in Florida). Because California's interests are more deeply affected by this dispute, factors two and three also favor the application of California law.

The fourth factor seeks to protect the parties' justified expectations. Restatement (Second) of Conflict of Laws § 6(2)(d). Although the parties here contest the meaning of the Fee Agreement, neither party disputes that they intended to enter into a contingent fee agreement. Hoiles traveled to California specifically to locate an attorney willing to represent him on a contingent fee basis. The parties subsequently entered into an agreement that explicitly provided for a fee based on a percentage of "anything recovered." Protecting the parties' expectations therefore requires application of whichever state's law will uphold the validity of the Fee Agreement. Alioto concedes the Fee Agreement is not enforceable under Colorado law. The parties contest the agreement's validity under California law. Therefore, only the application of California law will preserve the possibility of protecting the parties' justified expectation that they executed a valid contingent fee agreement. *See id*. § 6 cmt. g.

The fifth factor requires consideration of which state's law "will best achieve the basic policy, or policies, underlying the particular field of law involved" in the dispute. Restatement (Second) of Conflict of Laws § 6 cmt. h.

-13-

The parties disagree as to the particular field of law at issue here. Hoiles claims the appropriate field of law is attorney-client contingent fee agreements. He contends the policies underlying this field of law include protection of the client by full, written disclosure; assumption by the attorney of the risk of no recovery; and compensation for the attorney only upon the occurrence of an agreed-upon contingency. Alioto contends the appropriate field of law is contracts. He urges us to achieve the fundamental goal of contract law—giving effect to the intent of the parties—by applying California law to uphold the validity of the Fee Agreement. The law of contingent fee agreements is merely a subset of contract law. The Fee Agreement is both a contract and, more specifically, a contingent fee agreement. Therefore, the policies underlying both fields of law are relevant in determining the validity of the Fee Agreement.

The law governing contingent fee agreements in Colorado and California is similar. Both states require contingent fee agreements to be in writing and contain specific information to ensure full disclosure to the client. Cal. Bus. & Prof. Code § 6147; Colo. R. Governing Contingent Fees ch. 23.3. Once a contingent fee agreement is deemed valid, both states interpret the agreement by looking to its express language to ascertain the intent of the parties. Cal. Civ. Code § 1638; *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005). Both Colorado and California also construe any ambiguous language in the agreement in favor of the client. *Lane v. Wilkins*, 40

-14-

Cal. Rptr. 309, 315 (Cal. Ct. App. 1964); *Elliott v. Joyce*, 889 P.2d 43, 46 (Colo. 1994). Nevertheless, the description of information that must be disclosed in a contingent fee agreement under Colorado law is more exacting than that which must be disclosed under California law. Colorado law therefore arguably better ensures full disclosure of all pertinent information to the client. As a result, the policies underlying the law of contingent fee agreements arguably favor the application of Colorado law. We need not definitively decide this issue, however, because the policies underlying the law of contracts favor the application of California law in this case. Contract law strives to "[protect] the justified expectations of the parties." Restatement (Second) of Conflict of Laws § 188 cmt. b. As discussed above, the application of California law might fulfill the parties' expectation that they executed a valid contingent fee agreement whereas the application of Colorado law will clearly defeat the parties' expectation. Thus, even if the policies underlying the law of contingent fee agreements favor the application of Colorado law, this fifth factor does not favor the application of Colorado law because the policies underlying the law of contracts, which are equally relevant, favor California law. At most, this factor is neutral.

The sixth factor—certainty, predictability, and uniformity of result—favors the application of California law. Restatement (Second) of Conflict of Laws § 6(2)(f). In this case, a citizen traveled from his residence in Colorado to California to solicit representation from an attorney licensed to practice law only

in California. The majority of legal services performed pursuant to the contingent fee agreement the parties subsequently entered into were performed in California. Under these circumstances, it is predictable that California law would govern the Fee Agreement. Application of Colorado law, on the other hand, is less predictable. The relevant contacts with Colorado are limited. Although Hoiles is a Colorado resident and the Fee Agreement was signed by Hoiles in Colorado, these two contacts do not make the application of Colorado law predictable when compared to the numerous contacts with California present in this case.[5] *See id*. § 188(2) (listing contacts to be taken into account in determining state with most significant relationship).

---

[5]Hoiles contends other relevant contacts with Colorado include the following: Hoiles paid all expenses incurred by Alioto under the Fee Agreement from Colorado; if Hoiles breached the Fee Agreement by not paying the contingent fee, the breach occurred in Colorado; and the subject matter of the Fee Agreement, Hoiles' Freedom shares, were located in Colorado. These contacts are not persuasive. First, the origin of payments under a contract and the location of the breach are not relevant contacts under § 188 of the Restatement. Second, although the location of the subject matter of the contract is relevant, it does not carry great weight in this case. *See* Restatement (Second) of Conflict of Laws § 188(2) (noting "contacts are to be evaluated according to their relative importance with respect to the particular issue" in dispute). Alioto and Hoiles entered into a contingent fee agreement whereby Alioto would perform legal services with the aim of enabling Hoiles to sell his Freedom shares. The majority of the legal services rendered pursuant to the Fee Agreement were performed in California. Freedom, the company whose stock Hoiles owned, is incorporated in California and has its principle place of business in California. Under these circumstances, the fact that Hoiles' stock certificates were located in Colorado is of limited relevance.

The application of California law in this case would also create certainty and uniformity of result. Alioto is licensed to practice law only in California. He did not leave California to solicit business in another state. The legal services he rendered pursuant to the Fee Agreement were performed largely in California. In particular, he drafted a complaint asserting claims under a California antitrust statute for filing in California state court. Alioto is entitled, under these circumstances, to anticipate that California law will govern and draft his contingent fee agreement accordingly. Requiring an attorney to conform to the law of whichever state a client happens to reside in when the attorney is not licensed to practice in that state, does not solicit business in that state, and does not perform legal services in that state would create unnecessary uncertainty.

The seventh and final factor does not favor the application of either Colorado or California law. This factor evaluates the ease in determining and applying each interested state's law. Restatement (Second) of Conflict of Laws § 6(2)(g). Both Colorado and California have statutes explicitly enumerating the requirements for a valid and enforceable contingent fee agreement. Cal. Bus. & Prof. Code § 6147; Colo. R. Governing Contingent Fees ch. 23.3. Therefore, neither state's law would be difficult to determine or apply in assessing the validity of the Fee Agreement.

Five of the seven factors for ascertaining the state with the most significant relationship under § 6 of the Restatement weigh in favor of applying California

law in this case. The remaining two factors are neutral. Accordingly, California has the most significant relationship to the transaction and the parties, and its law should have been applied in determining the validity of the Fee Agreement.

Alioto argues, if this court determines the district court's choice of law ruling was erroneous, we should proceed to determine whether the Fee Agreement is enforceable under California law. He contends the Fee Agreement is enforceable and obligates Hoiles to pay him fifteen percent of the amount Hoiles and the Davidson Defendants received from the sale of their Freedom shares. He therefore urges this court to remand the case to the district court with instructions to award Alioto $21,293,121.84. Hoiles, however, contests the validity of the Fee Agreement even under California law. He claims the Fee Agreement fails to comply with California's statutory requirements because it does not sufficiently describe the contingent fee rate or discuss related matters not covered by the Fee Agreement. Alternatively, if the Fee Agreement is enforceable under California law, Hoiles argues the contingency contemplated by the agreement never occurred, and thus, Alioto is only entitled to quantum meruit. The district court has not assessed whether the Fee Agreement is enforceable under California law or evaluated the parties' competing interpretations of the agreement. Because these are issues best resolved in district court in the first instance, we decline to address them here. *See United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1061 n.6 (10th Cir. 2006). We therefore reverse the district court's determination that the

-18-

Fee Agreement is unenforceable, and remand for further proceedings consistent with this opinion.

## B. Misrepresentation Claims

Alioto also contends the district court erred in dismissing his fraud and negligent misrepresentation claims. In his breach of contract and unjust enrichment claims, Alioto alleged he was entitled to a contingent fee based on the sale of both Hoiles' and the Davidson Defendants' stock—a total of 666,961.5 shares. Alioto claimed Hoiles executed the Fee Agreement with actual or apparent authority to act on behalf of the Davidson Defendants and that the agreement contemplated a contingent fee based on amounts recovered from the sale of approximately 667,000 shares. In the event it was found Hoiles lacked authority to act on behalf of the Davidson Defendants, Alioto pled alternative theories of fraud and negligent misrepresentation. Alioto claimed,

> before the parties entered into the [Fee] Agreement, and throughout the course of [Alioto's] engagement for over two years, [Hoiles] repeatedly represented to [Alioto] that [Hoiles] had authority to represent and act on behalf of the interests of all approximately 667,000 Hoiles Shares, including the shares of [the Davidson Defendants].

Alioto alleged he reasonably relied on these intentionally, knowingly, or negligently false representations to his detriment in entering into the Fee Agreement and continuing to perform services pursuant to the agreement. Alioto sought both actual and punitive damages.

Hoiles filed a motion seeking summary judgement on, *inter alia*, Alioto's

fraud and negligent misrepresentation claims. In a ruling from the bench, the

district court denied Hoiles' motion. The district court noted there were "rampant

disputed facts on issues of causation and other issues, including the [Fee

Agreement]." After indicating it was denying Hoiles' motion for summary

judgment, the district court nevertheless proceeded to dismiss Alioto's fraud and

negligent misrepresentation claims with prejudice. The court stated,

> I will allow [Alioto] to seek a contingent fee based on the 667,000
> shares as opposed to [Hoiles'] 511,210 shares, on the basis that it
> was represented to him, or there was at least some factual issues
> regarding the scope of the full number of shares that were the subject
> of [the Fee Agreement].
>
> I will toss the fraud and negligent misrepresentation . . .
> claims. This is not going to be a tort case, and there is not going to
> be any punitive damage claim in this case.[6]

The district court therefore explicitly stated there were disputed issues of material

fact regarding Hoiles' representations as to the number of shares contemplated by

the Fee Agreement. Hoiles does not contest this determination on appeal.

Instead, he argues the district court's dismissal of Alioto's fraud and negligent

misrepresentation claims should be affirmed on other grounds. In particular,

Hoiles asserts (1) Alioto's reliance on the alleged misrepresentations was

unreasonable as a matter of law; (2) Alioto did not suffer any damages as a result

---

[6]The district court subsequently concluded the Fee Agreement was invalid under Colorado law and limited Alioto's recovery to quantum meruit.

of the alleged misrepresentations; and (3) any error in dismissing the fraud and negligent misrepresentation claims was harmless because Alioto's quantum meruit recovery encompassed services rendered with respect to both Hoiles' and the Davidson Defendants' shares.

Hoiles' first proposed ground for affirming the district court's decision—that Alioto's reliance on the alleged misrepresentations was unreasonable as a matter of law—is premised on *Fasing v. LaFond*, 944 P.2d 608 (Colo. Ct. App. 1997). In *Fasing*, an attorney orally agreed to represent a client on a contingent fee basis. *Id*. at 610. The attorney drafted a contingent fee agreement, but the client never signed it. *Id*. When the underlying case settled, the client filed suit, seeking a declaration that no valid contingent fee agreement existed. *Id*. The attorney asserted various counterclaims, including fraudulent misrepresentation. *Id*. at 611. Specifically, the attorney alleged the client had intentionally misrepresented to him that they had a valid and enforceable contingent fee agreement. *Id*. The trial court dismissed the fraudulent misrepresentation claim, and the appellate court affirmed. *Id*. at 611–12. Citing Colorado's rules governing contingent fee agreements, the appellate court observed Colorado places "the burden to ensure the validity of a contingent fee agreement . . . squarely and solely upon the attorney." *Id*.; *see also* Colo. R. Governing Contingent Fees ch. 23.3. Accordingly, the court determined it was

unreasonable as a matter of law for an attorney to rely on a client's representations regarding the validity of a contingent fee agreement. *Id*. at 612.

It is unclear whether Colorado courts would apply the reasoning of *Fasing*, which specifically relied on Colorado's rules and policies governing contingent fee agreements, to the present case in which California law governs the validity of the Fee Agreement. Hoiles did not raise *Fasing* below, and the parties' appellate briefs do not discuss whether California's rules and policies governing contingent fee agreements support the conclusion reached in *Fasing*. Because this issue is best addressed by the district court in the first instance after sufficient briefing by the parties, we decline to affirm the dismissal of Alioto's fraud and negligent misrepresentation claims on this ground. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1302–03 (10th Cir. 2006) (indicating "we have discretion to affirm on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground" (alteration, quotation, and citation omitted)).

Hoiles' second and third proposed grounds for affirming the dismissal of Alioto's fraud and negligent misrepresentation claims are related. Hoiles argues a plaintiff claiming fraud and negligent misrepresentation can only recover out-of-pocket expenses and consequential damages under Colorado law. He contends Alioto did not incur any out-of-pocket expenses because Hoiles was required to advance or reimburse all of Alioto's out-of-pocket expenses under the terms of

-22-

the Fee Agreement. Hoiles further asserts Alioto was compensated for any consequential damages he suffered by the quantum meruit award, which included compensation for services rendered by Alioto with respect to the Davidson Defendants' shares.

Hoiles' argument is based on a misstatement of Colorado law. Although Colorado only permits recovery of out-of-pocket expenses and consequential damages for a negligent misrepresentation claim, it allows benefit-of-the-bargain damages in an action for fraud.[7] *Ballow v. PHICO Ins. Co.*, 878 P.2d 672, 677 (Colo. 1994); *see also* Restatement (Second) of Torts § 549(2) (discussing benefit-of-the-bargain damages as "damages sufficient to give [the recipient of a fraudulent misrepresentation] the benefit of his contract with the maker"). Neither Hoiles' payment of Alioto's out-of-pocket expenses nor Alioto's quantum meruit recovery are sufficient to give Alioto the benefit of the bargain he allegedly struck in the Fee Agreement, i.e., payment on a contingent fee basis. Therefore, Hoiles' claim that Alioto did not suffer any damages to support his fraud claim fails.

---

[7]Alioto does not contest on appeal the district court's application of Colorado law to his tort claims. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996) (indicating "[c]hoice of law in a given case is not made once for all issues"). Nevertheless, we note California law also permits recovery of benefit-of-the-bargain damages for fraud. *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 275 (Cal. 2004).

Hoiles also cannot demonstrate that the quantum meruit award renders any error in dismissing Alioto's negligent misrepresentation claim harmless. If Alioto is successful on his negligent misrepresentation claim, he can recover a reasonable hourly rate for the services he rendered with respect to the Davidson Defendants' shares. *See W. Cities Broad., Inc. v. Schueller*, 849 P.2d 44, 49 (Colo. 1993) (en banc). Although the jury was allowed to consider Alioto's efforts in selling the Davidson Defendants' shares in calculating the quantum meruit award, it was not required to indicate the amount of the award attributable to work performed on behalf of the Davidson Defendants' shares. It is therefore impossible to determine whether any portion of the quantum meruit award was intended to compensate Alioto for services rendered on behalf of the Davidson Defendants' shares. Because the quantum meruit award does not necessarily compensate Alioto for consequential damages arising from any negligent misrepresentation, any error in dismissing Alioto's negligent misrepresentation claim was not harmless.[8]

In sum, Hoiles' proposed alternative grounds for affirming the dismissal of Alioto's fraud and negligent misrepresentation claims are unpersuasive.

---

[8]Additionally, if the district court determines on remand that the Fee Agreement is enforceable under California law, the quantum meruit award will be vacated. Due to this possibility, we cannot use the quantum meruit award as a basis for holding any error in the dismissal of Alioto's negligent misrepresentation claim harmless.

-24-

Moreover, Hoiles does not contest the district court's determination that there are disputed issues of material fact regarding Hoiles' representations as to the number of shares contemplated by the Fee Agreement. We therefore accept the district court's determination that an issue of material fact exists. Because we can discern no other justification for dismissing Alioto's fraud and negligent misrepresentation claims from the record before us, we reverse the district court's dismissal of those claims.

## C. Evidentiary Rulings

Alioto's remaining claims of error concern the jury instructions on Alioto's unjust enrichment claim. As an initial matter, Alioto argues his unjust enrichment claim is governed by California law. He nevertheless claims the jury instructions were erroneous under both Colorado and California law. In particular, Alioto challenges the district court's instruction that the jury could not consider the contingent fee percentage contained in the Fee Agreement or any other percentage, or whether Alioto's fee was fixed or contingent, in calculating a reasonable quantum meruit award. Additionally, Alioto claims the district court erred in instructing the jury that its quantum meruit award must be based on work Alioto personally performed and could not account for work performed by Alioto's co-counsel.

Recovery in quantum meruit is permitted only in the absence of a valid, express contract. *Lemoge Elec. v. San Mateo County*, 297 P.2d 638, 641 (Cal.

1956) (en banc); *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000) (en banc). Therefore, the jury trial during which the challenged instructions were given was necessary only because the district court determined the Fee Agreement was unenforceable. Because, as set out more fully above, we reverse the district court's determination that the Fee Agreement is unenforceable and remand for a determination of whether the agreement is valid under California law, we need not address the propriety of the jury instructions at this time.[9]

**IV. Conclusion**

For the foregoing reasons, we **REVERSE** the district court's determination that Colorado law governs the validity of the Fee Agreement and the district court's dismissal of Alioto's breach of contract claim. We **REMAND** with instructions for the district court to determine whether the Fee Agreement is enforceable under California law. We also **REVERSE** the district court's dismissal of Alioto's fraud and negligent misrepresentation claims. We express no opinion on Alioto's claims of error with respect to the quantum meruit jury instructions.

---

[9]We also decline to address whether Colorado or California law applies to Alioto's quantum meruit claim because the parties have not sufficiently briefed the issue on appeal. If necessary on remand, the district court should address this issue in light of our choice of law determination regarding the validity of the Fee Agreement. *See supra* pp. 7–19.