## No. C-1622

## Wood Bros. Homes, Inc., a Corporation v. Walker Adjustment Bureau

(601 P.2d 1369)

Decided October 22, 1979.                    Rehearing denied November 13, 1979.

George Alan Holley & Associates, Scott D. Albertson, for petitioner.

Weltzer & Worstell, Louis A. Weltzer, for respondent.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

Plaintiff-respondent, Walker Adjustment Bureau (Walker), brought suit in Colorado against defendant-petitioner, Wood Bros. Homes, Inc. (Wood), to recover on a contract between Walker's assignor, Fred Gagnon, and Wood. The trial court granted Wood's motion for summary judgment, ruling that under Colorado choice of law rules New Mexico law applied, and barred the action. In *Walker Adjustment Bureau v. Wood Bros. Homes, Inc.,* 41 Colo. App. 26, 582 P.2d 1059 (1978) the court of appeals reversed the trial court's judgment, holding that under the traditional conflict of law rules or the *Restatement (Second) of Conflict of Laws (Restatement (Second))* the law of Colorado applied and the con-

tract was enforceable. We granted certiorari and now reverse the judgment of the court of appeals.

Fred Gagnon, a resident of California, contracted with Wood, a Delaware corporation having its principal place of business in Colorado, to perform rough carpentry work on a Wood's apartment complex in Albuquerque, New Mexico. Contract negotiations took place in California, Colorado, and New Mexico. Gagnon commenced work on the project before August 22, 1972, the date the contract was signed in Colorado.

Shortly after Gagnon commenced work, New Mexico officials ordered construction halted because he had not obtained a New Mexico contractor's license. The New Mexico Construction Industries Licensing Act prohibits any person from engaging in the business of a contractor without first obtaining a license from the appropriate state commission. N.M. Stat. Ann. sections 67-35-1 *et seq.* (now section 60-13-1 *et seq.*). Wood promptly cancelled Gagnon's contract and refused to pay him, although Wood did pay approximately $27,000 to employees of Gagnon for the work they had completed. Walker, as Gagnon's assignee, then brought suit in Colorado seeking recovery against Wood on either a contract or quantum meruit theory.

## I.

The first issue is whether an unlicensed New Mexico contractor can recover either damages for breach of a construction contract to be performed in New Mexico or in quantum meruit for the value of services performed. Application of Colorado law would result in Wood being liable as there is no impediment to enforceability of the contract. Applying New Mexico law, however, the converse is true. N.M. Stat. Ann. section 67-35-33 (now section 60-13-30) provides:

"No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by the Construction Industries Licensing Act without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose."[1]

It is thus necessary to determine which law applies to resolve this issue.[2]

---

[1] The courts of New Mexico have consistently interpreted this section to preclude recovery by an unlicensed contractor in both contract and quantum meruit actions. Without an allegation and proof of a contractor's license, New Mexico law treats the complaint as invalid and the court as without jurisdiction to hear the matter. *See Campbell v. Smith,* 68 N.M. 373, 362 P.2d 523 (1961); *Salter v. Kindon Uranium Corp.,* 67 N.M. 34, 351 P.2d 375 (1960);*Kaiser v. Thompson,* 55 N.M. 270, 232 P.2d 142 (1951); *Fleming v. Phelps-Dodge Corp.,* 83 N.M. 715, 496 P.2d 1111 (1972).

[2] We first note that both Colorado and New Mexico have sufficient contacts with the controversy and the parties that either state's local law can be constitutionally applied in this case. *See Clay v. Sun Insurance Office, Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); *Home Insurance v. Dick,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930).

Under the traditional conflict of laws rule for contract actions, the law of the place of execution governs questions regarding the formation of the contract, while the law of the place of performance governs issues relating to the performance of the contract. *Western Enterprises, Inc. v. Robo,* 28 Colo. App. 157, 470 P.2d 931 (1970); *Cockburn v. Kinsley,* 25 Colo. App. 89, 135 P. 1112 (1913). This rule, however, has frequently proven unduly inflexible, leading to harsh and unjust results. Courts have often been forced to employ a multitude of escape devices to reach an equitable result. Therefore the traditional choice of law rules no longer provide the predictability and uniformity which were considered their primary virtues. *See First National Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973).

■ In adopting the *Restatement (Second)* approach for tort actions, this court recognized the shortcomings of the traditional conflict of laws rule and the benefits of the most significant relationship approach of the *Restatement (Second). Dworak v. Olson Construction Co.,* 191 Colo. 161, 551 P.2d 198 (1976); *First National Bank v. Rostek, supra.* For the same reasons enunciated in *Rostek* we now adopt the *Restatement (Second)* approach for contract actions.

■ Where a conflict of laws question is raised, the objective of the *Restatement (Second)* is to locate the state having the "most significant relationship" to the particular issue. In analyzing which state has the most significant relationship, the principles set forth in *Restatement (Second)* sections 6[3] and 188[4] are to be taken into account. Once the state having the most

---

[3] §6 Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

[4] §188 Law Governing in Absence of Effective Choice by the Parties

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §6.

(2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§189-199 and 203.

significant relationship is identified, the law of that state is then applied to resolve the particular issue.

In addition to the general principles set forth in sections 6 and 188, several sections of Chapter 8 (Contracts) of the *Restatement (Second)* apply to specific types of contracts. Section 196 applies to contracts for the rendition of services. It provides:

"The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the transaction and the parties, in which event the local law of the other state will be applied."

■ The effect of section 196 is to create a presumption that the state where services are to be performed is the state having the most significant relationship to the issue of the validity of the contract. The presumption is not conclusive. If another state has a more significant relationship, then the law of that state will be applied.

The court of appeals held that under the *Restatement (Second)* Colorado would be the state having the most significant relationship because of the "rule of validation." We disagree.

■ Colorado's interest in the validation of agreements and protection of the parties' expectations is a central policy underlying the law of contracts. *See Restatement (Second)* section 6, comment (2)(h)(1971). While this interest is strong, it does not necessarily supersede all others.

■ The New Mexico Construction Industries Licensing Act provides a comprehensive and mandatory system of licensing for persons engaged in construction work in New Mexico. The act is designed to protect New Mexico citizens against "substandard or hazardous construction . . . and by providing protection against the fiscal irresponsibility of person engaged in construction occupations or trades . . . ." N.M. Stat. Ann. section 67-35-4 (now section 60-13-4). Potential contractors must present evidence of financial responsibility, demonstrate a familiarity with building regulations, submit proof of registration with the tax office, pass an examination, and must not have engaged illegally in the contracting

business in New Mexico within the past year. Those who build without a license are subject to a criminal sanction and are expressly barred from obtaining judicial enforcement of their contract or from recovery for the value of services performed.

In this situation the value of protecting the parties' contractual expectations is outweighed by New Mexico's interest in applying its invalidating rule. *A fortiori,* the presumption of section 196 that New Mexico law applies has not been rebutted. The law of New Mexico applies to resolve this issue, and as discussed above, the action is consequently barred. This conclusion is in accord with *Restatement (Second)* section 202(2)(1971) which provides: "When performance is illegal in the place of performance, the contract will usually be denied enforcement."

## II.

The second issue before us is whether Wood should be estopped from asserting that Gagnon was an unlicensed contractor in New Mexico. The court of appeals determined that under Colorado law Wood was estopped because it knew Gagnon did not have a New Mexico contractor's license and had indicated to Gagnon that he could work under its general contractor's license.

Assuming *arguendo* that Colorado has an interest in the resolution of this issue and that a conflict exists between the results of applying Colorado and New Mexico law, the state having the most significant relationship to resolution of this issue must be located. For the reasons set forth above, New Mexico's interest clearly preponderates, and therefore is the state having the most significant relationship to this issue.

Since under New Mexico law estoppel cannot be founded on an illegal contract, a defendant cannot be estopped from asserting a plaintiff's nonconformance with the licensing requirement of the New Mexico Construction Industries Licensing Act. *Kaiser v. Thompson,* 55 N.M. 270, 232 P.2d 142 (1951). Therefore Wood cannot be estopped from asserting Gagnon's failure to have a New Mexico contractor's license.

Accordingly, the judgment of the court of appeals is reversed.