Lori **WRIGHT, d/b/a Frontier Sales, Plaintiff,**

v.

**MARTEK POWER, INC., Defendant.**

No.  CIV.A.02–K–1473.

United States District Court, D. Colorado.

April 12, 2004.

Frederick L. Ginsberg, Parker, CO, for Plaintiff.

John Nathaniel McNamara, Jr., Thomas George Tasker, McNamara Law Firm, P.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

In this diversity action Plaintiff Lori Wright, d/b/a Frontier Sales, asserts claims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment against defendant Martek Power, Inc. ("Martek") in connection with Martek's termination of her Sales Representative Agreement with the company. This matter is before me on Martek's motion for summary judgment. For the reasons stated below, I grant Martek's motion in part and deny it in part.

### BACKGROUND

The following facts are undisputed unless otherwise stated:

Wright began working as an independent sales representative for Martek's predecessor-in-interest, Power Switch, in 1994. By the time Martek purchased Power Switch in 1998, Wright maintains she had made key contacts at Storage Technology Corp. ("Storage Tek"), a Louisville, Colorado company with needs matching Power Switch/Martek's products. Wright alleges she made Defendant aware of these contacts. Wright continued working as an independent sales representative for Martek after it acquired Power Switch.

On July 7, 2000, at Martek's request, Wright and Martek for the first time entered into a written Sales Representative Agreement ("SRA"). In the SRA, Wright agreed to act as Martek's exclusive authorized sales representative for the states of Colorado, Utah and Wyoming, in return for a commission on Martek product sales in this territory. The SRA provided either party could terminate the agreement without cause upon 30 days written notice. In case of termination by Martek, the SRA states:

> [C]ommission payments shall continue to be made after termination of this Agreement on all sales within the Territory to the extent that such sales are booked and acknowledged by [Martek] in writing before the effective date of termination *and which are shipped within 90 days after the effective date of termination.*

SRA, § 4(f) (emphasis added).

Wright contends that before signing the SRA she expressed reservations about the no-cause termination provision to Martek's Vice–President, William Standen, and was reassured by him that "[a]s long as you are doing your job, you don't need to worry about that." Wright Dep., Vol. II, at 74. Standen and Martek deny this conversation took place or that Martek made any special assurances to Wright. Wright also maintains she had an ongoing relationship of trust with Martek as a result of her long relationship with it and its predecessor-in-interest.

On July 24, 2001, Martek notified Wright by letter that it was terminating its relationship with her effective in 30 days. Wright alleges that as of the date of the termination letter she had completed sales of Martek's products to Storage Tek totaling more than $11,000,000, entitling her to approximately $563,000 in commissions. She further alleges that Martek only paid her approximately $35,000 of this total as a result of its decision to terminate her more than 90 days before the majority of these sales were shipped. Martek asserts in response that it terminated Wright in accordance with the SRA and denies her other allegations.

Wright seeks damages from Martek based on claims for breach of the implied

covenant of good faith and fair dealing associated with the SRA and for unjust enrichment. The parties stipulate that Texas law governs both claims based on the SRA's provision that "all questions arising out of or under this Agreement shall be governed by the laws of the state of Texas." There is no indication in the record, however, that Texas has any ties to the SRA, the parties to this action or its underlying events, as Wright is a Colorado citizen conducting business from her Colorado office and Martek is a Delaware corporation with its principal place of business in California. Martek Vice–President Standen, who signed the SRA on Martek's behalf and authored the July 2001 termination letter, operates out of Martek's California headquarters.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Martek, as the moving party, has the initial burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* If Martek carries this burden, then the burden shifts to Wright to "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir.2001).

## IV. ANALYSIS

Martek argues it is entitled to summary judgment because, viewing the undisputed and disputed facts in the light most favorable to Wright, neither of her claims are cognizable under Texas law. With respect to Wright's claim for breach of the implied covenant of good faith and fair dealing, Martek correctly asserts that Texas, contrary to Colorado, most jurisdictions and the Restatement (Second) of Contracts § 205(1979), does not recognize an implied covenant of good faith and fair dealing in all contracts. *See, e.g., Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex.2002). Martek contends Wright's unjust enrichment claim also fails because the existence of an express written agreement, the SRA, precludes this claim under Texas law.

Initially, I express reservations about the application of Texas law to this case. In actions in which jurisdiction is based on diversity of citizenship, the substantive law of the forum state applies, including its choice of law rules. *O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1225 (10th Cir.2002); *Moore v. Subaru of America*, 891 F.2d 1445, 1448 (10th Cir.1989). Colorado has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws for resolving choice of law questions in contract actions.[1] *Century 21 Real Es-*

---

1. Colorado applies the same rule to choice of law questions concerning tort claims. *See*

*Wood Bros.*, 601 P.2d at 1372.

tate Corp. v. Meraj Int'l Inv. Corp., 315 F.3d 1271, 1281 (10th Cir.2003) (applying Colorado law); Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 601 P.2d 1369, 1372 (1979). Under this approach, the law of the state chosen by the contracting parties to govern their contractual rights and duties will be applied *unless:* (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) "application of the law of the chosen state would be contrary to a fundamental policy of a state" whose law would govern the parties' dispute in the absence of an effective choice of law by the parties.[2] Restatement (Second) of Conflict of Laws § 187(2); *see Century 21,* 315 F.3d at 1281; *Hansen v. GAB Business Servs., Inc.,* 876 P.2d 112, 113 (Colo.Ct.App.1994).

■ Here, the current record does not show a relationship, substantial or otherwise, between Texas, the SRA and the parties to the SRA or any other reasonable basis for Texas law to govern disputes arising out of the SRA. Even if such a reasonable basis existed, it also appears at this juncture that application of Texas law to prevent Wright from enforcing an implied covenant of good faith and fair dealing in the SRA would be contrary to a fundamental policy of Colorado (as the state that presumably has the most significant relationship to the dispute in the absence of an effective choice of law by the

parties),[3] namely Colorado's interest in protecting the reasonable expectations of the parties to the SRA. *See Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498–99 (Colo.1995) (stating rationale for implying covenant of good faith and fair dealing in all contracts). Accordingly, notwithstanding the choice of Texas law in the SRA and the parties' stipulation based on that contractual provision, the current record does not support application of Texas law to this action.[4]

■ Even assuming Texas law governs this action, I find genuine issues of fact preclude entry of summary judgment against Wright on her claim for breach of the implied covenant of good faith and fair dealing associated with the SRA. While Texas does not recognize an implied covenant of good faith and fair dealing in all contracts, it does recognize an equivalent tort duty when there is a "special relationship" between contracting parties.[5] *See, e.g., Subaru,* 84 S.W.3d at 225; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992). The characteristics of a special relationship giving rise to this duty include "long standing relations, an imbalance of bargaining power and significant trust and confidence shared by the parties." *Caton v. Leach Corp.,* 896 F.2d 939, 948 (5th Cir.1990) (applying Texas law). The Texas Supreme Court has found a special relationship exists under this test in all insurance contracts as a result of the parties' unequal bargaining power, *see Arnold v.*

---

**2.** The contacts to be considered in determining the state having the most significant relationship to a particular contract issue in the absence of an effective choice of law by the parties are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Wood Bros. Homes,* 198 Colo. at 447 & n. 4 (citing Restatement (Second) § 188).

**3.** See factors set forth in n. 2 *infra.*

**4.** A final determination of this question awaits a more complete record of the relevant facts.

**5.** Although Wright appears to have pled her first claim as a breach of the implied contractual covenant of good faith recognized by most jurisdictions, both parties have also treated this claim as one for breach of the separate tort duty of good faith recognized in some circumstances under Texas law.

*Nat'l County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987), but has held that the at-will employee relationship, in and of itself, is not a special relationship giving rise to this duty. *City of Midland v. O'Bryant,* 18 S.W.3d 209, 215–16 (Tex. 2000). In a decision issued before the Texas Supreme Court decided this question, the Fifth Circuit declined to hold that the relationship between an independent sales representative and a manufacturer necessarily qualified as a special relationship because the Texas high court had not yet spoken to this issue even in the employer-employee context. *Caton,* 896 F.2d at 949.[6]

Here, Wright argues a special relationship creating a duty of good faith under Texas law exists as a result of her long-standing relationship of trust with Martek and its predecessor and the specific assurances she received from Martek in response to her inquiries before signing the SRA. That this relationship occurred in the context of an independent sales representative agreement is not determinative because, under Texas law, "[t]he nature of the relationship between the parties, not merely the existence of the contract alone, is the essential factor in determining whether such a duty exists." *Stewart Title.Guar. Co. v. Aiello,* 941 S.W.2d 68, 71 (Tex.1997). Given the factors for determining a special relationship under Texas law, a rational juror accepting Wright's allegations could find a special relationship exists, which would give rise to the tort

duty of good faith and fair dealing and allow Wright's claim for breach of that duty to proceed. *Cf. Herrin v. Medical Protective Co.,* 89 S.W.3d 301, 308 (Tex. App.2002) (denying summary judgment based on genuine issue of whether a special relationship giving rise to duty of good faith and fair dealing existed given plaintiff's deposition testimony regarding nature of the relationship).

As to Wright's claim for unjust enrichment, Martek argues that the existence of an express written agreement covering the services in question precludes her claim under Texas law. *See, e.g., Fortune Production Co. v. Conoco, Inc.,* 52 S.W.3d 671, 683 (Tex.2000); *Murray v. Crest Const., Inc.,* 900 S.W.2d 342, 345 (Tex.1995). Wright argues her unjust enrichment claim may nonetheless proceed pursuant to an exception to Texas' general rule that allows recovery when the plaintiff has partially performed an express agreement but is prevented from completing the contract because of the defendant's breach. *See Truly v. Austin,* 744 S.W.2d 934, 936 (Tex. 1988). Wright does not identify any breach of the SRA by Martek, however, and none is apparent on the current record.[7] Therefore, under Texas law and the undisputed facts, Wright cannot maintain her claim for unjust enrichment.

■ With some exceptions that are not applicable here, Colorado law also precludes maintenance of a claim for unjust enrichment when an express contact cov-

---

**6.** In fact, the Texas Supreme Court's subsequent *Midland* decision does not necessarily support the Fifth Circuit's holding, because the Texas court based its decision on the variety of state statutes already in place to regulate and remedy employer-employee disputes and its concern that imposing a common law duty in the employment context would subvert these statutes by allowing employees to make an end-run around their procedural and other requirements. *Midland,* 18 S.W.3d at 216. No showing has been made

that a similar statutory structure applies in the relationship between an independent sales representative and a manufacturer.

**7.** To the extent Wright is seeking to rely on Martek's alleged breach of the duty of good faith and fair dealing, this reliance is unavailing because this is a tort duty under Texas law, rather than a duty imposed by contract. *See, e.g., Crim,* 823 S.W.2d at 594; *Caton,* 896 F.2d at 943.

ers the same subject matter as the implied-in-law contract. *See, e.g., R.N. Robinson & Son, Inc. v. Ground Improvement Techniques,* 31 F.Supp.2d 881, 889 (D.Colo. 1998) (applying Colorado law); *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.,* 77 P.3d 814, 816 (Colo.Ct. App.2003). As a result, under either Texas or Colorado law, the existence of the SRA and its express provisions governing the commission to be paid Wright upon termination prevent Wright from recovering on her unjust enrichment claim. Because Martek is entitled to summary judgment on this claim under both Texas and Colorado law, summary judgment will be entered against this claim notwithstanding the uncertainty as to which state's law governs the parties' dispute.

For the reasons stated above, I DENY Martek's motion for summary judgment against Wright's first claim for relief (breach of the implied covenant or duty of good faith and fair dealing) and GRANT its motion for summary judgment against Wright's second claim (unjust enrichment). Judgment shall be entered for Martek and against Wright on Wright's Second Claim for Relief.