**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

U.S. FOODSERVICE, INC.,

        Plaintiff - Appellee,

    v.

SHAMROCK FOODS COMPANY, INC.,

        Defendant - Appellant.

No. 05-1417

D. Colo.

(D.C. No. 04-CV-2426 RPM)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

---

Shamrock Foods Company (Shamrock) appeals from the district court's denial of its application for costs and attorneys' fees. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.  Background

A.  Protocol to Prevent Future Disputes

U.S. Foodservice (USF) distributes food and food-related products to restaurants, schools and other facilities.  Shamrock is also a foodservice distributor and one of USF's competitors.  As a condition of their employment and/or to partake in employee incentive programs, many USF and Shamrock sales employees sign contracts in which they agree, *inter alia*, (1) not to solicit their former employer's customers for one year after their termination/resignation and (2) not to use or disclose their former employer's confidential information after their termination/resignation.

In 2002, several lawsuits arose between USF and Shamrock concerning the hiring of employees who had signed non-solicitation and non-disclosure agreements with the other entity (their former employer).[1]  In late September 2002, the parties settled the lawsuits.  The settlement agreement contained a "Protocol to Prevent Future Disputes" (Protocol) in which the parties agreed to honor each other's non-solicitation and non-disclosure agreements and established procedures to prevent future disputes between them.  (R. App. at 81.)  One of the procedures required:

---

[1] Two of the cases arose in Arizona and one in California.  Two of the cases involved Alliant Foodservice, Inc., which USF later acquired.

On any occasion where the former employer informs the hiring party that the former employer has information that causes it to believe that a former employee employed by the hiring party is violating his/her agreement with the former employer, the hiring party shall (I) instruct the employee to comply with the contract, (ii) in good faith conduct a prompt and thorough investigation of the allegation, and (iii) advise the former employer of the results of its investigation and the specific remedial steps if any, it has taken.

(*Id*. at 83.) The Protocol also contained a fee-shifting provision:

In the event that the hiring party's investigation and remedial measures do not cure the violation and the former employer commences and prevails in a lawsuit to enforce its rights, the hiring employer shall be liable to the former employer for the former employer's costs and expenses, including reasonable attorneys' and investigators' fees, incurred in investigating and pursuing such violation, together with damages and such other and further legal and equitable relief as the Court may grant. Otherwise, the prevailing part(ies) shall recover its costs and expenses, including reasonable attorneys' and investigator's fees incurred in defending against the claim(s) of violation, together with damages and such other and further legal and equitable relief as the Court may grant.

(*Id*. at 85.)

B. Current Lawsuit

Prior to August 2004, Norman Joseph, Benjamin Ayotte and Greg Meiris worked as territory managers for USF in its Colorado offices. As territory managers, they were USF's primary contact with its customers and had access to USF's confidential and proprietary information. In December 2003, Joseph, Ayotte and Meiris entered into USF's Points of Focus Program for fiscal year

2004.[2]  As a condition of their participation in the program, they were required to sign a "Non-Solicitation and Non-Disclosure Agreement."  (R. App. at 46.)  In relevant part, this agreement prohibited Joseph, Ayotte and Meiris from (1) soliciting any USF customer with which they had contact in the eighteen months preceding their termination/resignation and (2) disclosing or using USF's confidential information.  The non-solicitation of customers provision was effective during their employment with USF and for one year after their termination/resignation.  The non-disclosure of confidential information restriction did not have an expiration date.  However, the agreement recognized that certain states required such restrictions to be of finite duration and to the extent these states' laws applied, the restriction expired three years after termination/resignation.

On August 6, 2004, Joseph resigned from USF and immediately began working for Shamrock.  On August 10, 2004, USF sent Joseph a letter reminding him of his obligations under the non-solicitation and non-disclosure agreement.  Nevertheless, USF soon learned Joseph was soliciting USF customers, disclosing USF's confidential information and disparaging USF (which was also prohibited

---

[2] USF's Points of Focus Program is a rewards and incentive program for its sales employees.  Upon making certain sales, employees earn points which may then be redeemed for valuable items including automobiles, boats, college tuition and travel packages.

under the agreement).[3]  On August 26, 2004, USF wrote Shamrock a letter

informing it of these violations.  Shamrock's counsel responded denying Joseph

was violating his agreement with USF and requesting USF provide evidence of

such violations.  USF's counsel replied, accusing Shamrock of violating the

Protocol due to its failure to conduct a good-faith investigation of its allegations.

On September 22, 2004, Ayotte and Meiris left USF and began working for

Shamrock.  USF sent two consecutive letters reminding them of their obligations

under the non-solicitation and non-disclosure agreements.  Thereafter, USF

learned Ayotte and Meiris were soliciting USF customers.[4]

_____

[3] In his November 18, 2004 affidavit, Tim Burns, USF's District Sales Manager, stated:  "Joseph had been USF's primary contact to at least thirty-two customers during his last eighteen months of employment.  Since Joseph's employment with Shamrock began, USF lost and continues to lose business and goodwill on a weekly basis from twenty of those customers."  (R. App. at 43.) One of the customers Joseph serviced while employed by USF was a child development center.  The assistant director of the center issued an affidavit stating Joseph attempted to solicit the center's business for Shamrock one week before he left USF and again after commencing employment with Shamrock.  In doing so, Joseph told the assistant director that Shamrock's food quality was better and its prices were lower than USF's.  He also said USF was in "horrific financial shape, near bankruptcy, and going under, but [] Shamrock was in solid financial shape."  (R. App. at 96.)

[4] With regard to Meiris and Ayotte, Burns's affidavit states:  "Meiris and Ayotte had been USF's primary contact to at least fifty-seven customers during their last eighteen months of employment.  Since their employment with Shamrock began, USF lost and continues to lose business and goodwill on a weekly basis from eleven of those customers."  (R. App. at 44.)  USF also submitted an e-mail sent from Meiris' USF account to one of his USF customers inviting it to a food show to "see what [Shamrock] has to offer."  (*Id.* at 66.)  USF also interprets this e-mail as an apparent attempt by Meiris to skirt his obligation

On November 22, 2004, USF filed suit against Joseph, Ayotte and Meiris, alleging they had breached their non-solicitation and non-disclosure agreements (individual agreements) with USF. USF also named Shamrock as a defendant, claiming it breached the Protocol. USF further alleged (1) tortious interference with contractual relations and misappropriation of business value against all defendants, (2) breach of fiduciary duty and loyalty against Joseph, Ayotte and Meiris and (3) defamation against Joseph and Shamrock. The next day, USF filed a motion for preliminary injunction to enjoin Joseph, Ayotte and Meiris from violating the individual agreements and Shamrock from permitting and encouraging these violations.

Thereafter, Shamrock, Joseph, Ayotte and Meiris (collectively Defendants) filed a motion to dismiss USF's breach of contract, tortious interference and defamation claims, arguing the individual agreements were void under Colorado law and Shamrock had not violated the Protocol. Four days later, USF filed a motion to set a preliminary injunction hearing, informing the court the non-solicitation provision of the individual agreements would expire in August and September 2005. The next day, the court denied USF's motion, determining Defendants' motion to dismiss raised legal issues which needed to be addressed

not to solicit his USF customers by trading this customer with Ayotte for one year afer they both joined Shamrock.

before an evidentiary hearing on USF's motion for preliminary injunction could be set. On April 1, 2005, the court denied Defendants' motion to dismiss, concluding the issues raised could not be resolved at the dismissal stage.

The court held a scheduling conference on June 10, 2005. At the conference, the parties and court discussed a choice-of-law dispute pertaining to the individual agreements.[5] Because this issue had the potential to affect the entire case, the court ordered further briefing. USF requested a preliminary injunction hearing be scheduled for the end of July, early August 2005. The court informed USF the earliest possible date would be the end of October 2005.

Thereafter, on June 24, 2005, Defendants filed an amended answer which included a counterclaim by Shamrock against USF. Shamrock alleged USF was violating the Protocol by continuing to service customer accounts which had been improperly solicited by USF Arizona employee David Barrie, a former Shamrock employee, in violation of his non-solicitation and non-disclosure agreement with Shamrock. Five days later, Defendants filed their brief concerning the choice of

---

[5] The individual agreements contained a choice-of-law provision stating Maryland law would govern their validity, interpretation and performance because USF's headquarters and principal place of business were in Maryland, a substantial portion of USF's business was based and directed from Maryland and most purchasing of USF's products was coordinated in Maryland. Nevertheless, Defendants argued the court should ignore the choice-of-law provision and apply Colorado law because (1) Maryland had no substantial relationship to the parties or transaction and (2) application of Maryland law would violate Colorado's public policy disfavoring non-competition agreements.

law issue. On July 14, 2005, USF filed a motion to dismiss Shamrock's counterclaim. USF responded to Defendants' choice of law brief on July 19, 2004.

On July 22, 2005, before the court ruled on the choice of law issue and USF's motion to dismiss Shamrock's counterclaim, USF filed an "Unopposed Motion for Voluntary Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(2)."[6] USF explained it was moving for voluntary dismissal without prejudice of its complaint because (1) Defendants' violations of the individual agreements and Protocol had curtailed since the filing of the lawsuit and (2) the Protocol and individual agreements would expire in August and September 2005, before a preliminary injunction hearing could take place. Six days later, on July

---

[6] Rule 41(a) provides in relevant part:

(a) Voluntary Dismissal: Effect Thereof.

> (1) By Plaintiff; by Stipulation. [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice . . . .

> (2) By Order of Court. Except as provided in paragraph (1) . . . , an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper . . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

28, 2005, Shamrock filed a notification of its intent to file a voluntary dismissal without prejudice of its counterclaim, which the court construed as a voluntary dismissal of the counterclaim. The same day, the court dismissed USF's complaint and Shamrock's counterclaim without prejudice.

Subsequently, Shamrock filed an application for costs and attorneys' fees under the Protocol's fee-shifting provision. In essence, Shamrock asserted that because it had been "totally vindicated" by USF's voluntary dismissal, it was the "prevailing part(ies)" under the Protocol. (App. at 287-88.) Shamrock sought attorneys' fees and costs totaling $40,034.00, for the representation of Shamrock, Joseph, Ayotte and Meiris. The court denied Shamrock's application, concluding "[USF's] voluntary dismissal without prejudice does not provide grounds for determining that [Shamrock] is the prevailing party within the terms of the [Protocol] . . . ." (R. App. at 314.)

## II. Choice of Law

Unlike the individual agreements, the Protocol does not contain a choice-of-law provision. Because we are sitting in diversity, we apply the substantive law of the forum state including its choice of law rules. *Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1001 (10th Cir. 2004). The forum state is Colorado. Colorado has adopted the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws for resolving conflict of law questions in contract

cases. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979). "This approach requires courts to apply the law of the state which, with respect to the particular issue in dispute, has the most significant relationship to the transaction and the parties." *Hoiles v. Alioto*, 461 F.3d 1224, 1230 (10th Cir. 2006). To determine which state has the most significant relationship, courts consider, *inter alia*, the needs of the interstate and international systems, the relevant policies of the forum and other interested states, the protection of justified expectations, and the basic policies underlying the particular field of law. Restatement (Second) of Conflict of Law § 6. They also consider the following contacts: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the contract's subject matter and (5) the parties' domicil, residence, nationality, place of incorporation and place of business. *Id.* § 188.

Applying this analysis, it is unclear where the Protocol was entered into or negotiated. However, it was part of a settlement agreement resolving litigation in Arizona and California and was to be performed in Arizona, California, Colorado and New Mexico.[7] The parties to the Protocol were USF, Shamrock and Alliant.

---

[7] The Protocol states the parties "shall honor each other's contracts [*i.e.*, their non-solicitation and non-disclosure agreements] . . . in their New Mexico, Arizona, *Colorado* and California offices . . . ." (R. App. at 81-82 (emphasis added)).

Although the record does not reveal Alliant's principal place of business or state of incorporation, USF is incorporated in Delaware with its principal place of business in Maryland and Shamrock is incorporated in Colorado with its principal place of business in Arizona. The Protocol's subject matter involves methods to prevent future disputes between the parties concerning the hiring of employees who had signed non-solicitation and non-disclosure agreements with the other entity. The current lawsuit arose out of alleged violations of those agreements by persons living and working in Arizona (Barrie) and Colorado (Joseph, Ayotte and Meiris) and alleged violations of the Protocol by USF and Shamrock in Arizona and Colorado.

Shamrock cited mainly to Colorado law in its application for costs and fees and both parties primarily rely on Colorado law on appeal. Therefore, we apply Colorado law and decline to address whether application of Arizona law (or any of the other relevant states' laws) would result in a different outcome. *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1062 (10th Cir. 1998) ("Because the parties proceed on the assumption that Kansas substantive contract law applies, we apply that law without further analysis.").

### III. Standard of Review

Because the interpretation of a contract is a question of law in Colorado, *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001),

our review is de novo. *Kaw Nation v. Springer*, 341 F.3d 1186, 1189 (10th Cir. 2003). Determination of which party succeeded or prevailed under a contractual fee-shifting provision is within the trial court's discretion and is reviewed for an abuse of that discretion. *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n.6 (Colo. 1994) (*Spencer*); *Brock v. Weidner*, 93 P.3d 576, 579 (Colo. Ct. App. 2004).

## IV.  Discussion

Shamrock argues the district court erred in denying its application for costs and attorneys' fees under the Protocol's fee-shifting provision. Again, this provision states:

> In the event that the hiring party's investigation and remedial measures do not cure the violation and the former employer commences and prevails in a lawsuit to enforce its rights, the hiring employer shall be liable to the former employer for the former employer's costs and expenses, including reasonable attorneys' and investigators' fees, incurred in investigating and pursuing such violation, together with damages and such other and further legal and equitable relief as the Court may grant. Otherwise, the prevailing part(ies) shall recover its costs and expenses, including reasonable attorneys' and investigator's fees incurred in defending against the claim(s) of violation, together with damages and such other and further legal and equitable relief as the Court may grant.

(R. App. at 85.)

Under the Protocol's fee-shifting provision, Shamrock asserts if the former employer does not prevail in its lawsuit, the defending parties are *automatically* entitled to their costs and attorneys' fees. Because USF (the former employer)

-12-

failed to secure any relief before voluntarily dismissing its claims, Shamrock asserts USF clearly did not prevail and it is automatically entitled to its costs and fees. USF agrees the fee-shifting provision requires the hiring employer to pay the former employer's costs and attorneys' fees if the former employer prevails in a lawsuit to enforce its rights under the Protocol. However, it disagrees that if the former employer does not prevail, the hiring employer is automatically entitled to its fees. If that was so, USF claims the second sentence of the fee-shifting provision would simply read: "Otherwise, the *hiring employer* shall recover its costs and expenses." (Appellee's Br. at 9 (quotations omitted).)

"The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & County of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). The parties' intent is to be determined primarily from the language of the contract itself, giving its terms their plain and ordinary meaning. *Id.*; *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). The meaning of a contract must be determined from the entire instrument, not by viewing clauses or phrases in isolation. *Allstate Ins. Co.*, 52 P.3d at 819. "A contract should be interpreted to harmonize and to give effect to all its provisions, if possible." *Bedard v. Martin*, 100 P.3d 584, 588 (Colo. Ct. App. 2004).

As evidenced by the Protocol itself, the parties' intent in entering into it

-13-

was to prevent future disputes between them concerning the hiring of employees who had signed non-solicitation and non-disclosure agreements with the other entity.[8] To this end, the Protocol establishes procedures to avoid such disputes. One of those procedures requires the hiring employer to investigate and take appropriate remedial measures if the former employer informs the hiring employer it believes a former employee hired by the hiring employer is violating his non-solicitation and non-disclosure agreement. The Protocol's fee-shifting provision anticipates that the hiring party's investigation and remedial measures may not cure the violation and the former employer may need to resort to litigation to enforce its rights. In such circumstances, if the former employer prevails, the hiring employer shall be liable for the former employer's costs and expenses, including its attorneys' fees. The parties agree with this interpretation.

Turning to the second part of the fee-shifting provision, at first blush it seems to require the former employer to pay the hiring employer its attorneys' fees if the former employer does not prevail. This is because of the use of the term "otherwise," which in this context means "if not; else." *See* http://dictionary.oed.com. However, this interpretation, which Shamrock urges, ignores the adjective "prevailing" preceding "part(ies)." Thus, the fee-shifting

---

[8] In general, the purpose of contractual fee-shifting provisions is to "encourage compliance with contracts and discourage unfounded lawsuits." *Spencer*, 884 P.2d at 337 (Rovira, J., dissenting).

provision does not automatically require an award of fees to the hiring employer

if the former employer does not prevail but rather requires the hiring employer to

be a *prevailing* party. Consequently, despite its prolixity, the Protocol's fee-

shifting provision requires an award of fees to the prevailing party.[9]

The question presented is whether Shamrock was the "prevailing part(ies)."

The Protocol does not define the term. Shamrock asserts it was the prevailing

party because it was "completely vindicated" and "achieved complete success,"

*i.e.*, it avoided imposition of injunctive relief, paid no damages, and made no

concessions or commitments. It also points to a number of cases holding a

---

[9] Shamrock relies on *American Insurance Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185 (10th Cir. 1992). There, the plaintiff/purchaser sought its attorneys' fees under the following fee-shifting provision: "In the event there should be legal action in connection with this Purchase Order, *then if the Seller is not the prevailing party in such action*, Seller agrees to pay the reasonable legal fees and other costs incurred in such legal action by the Purchaser." *Id*. at 1187 (emphasis added). We rejected the defendants/sellers' argument that the plaintiff/purchaser could not recover its fees under this provision because it was not the prevailing party. *Id*. at 1192. We concluded it was not the plaintiff/purchaser's status as a prevailing party which determined whether it was entitled to fees but rather the defendants/sellers'. *Id*. This case is clearly distinguishable. The Protocol's fee-shifting provision, unlike the provision in *American Insurance*, expressly requires the party seeking fees to have prevailed in the lawsuit.

Shamrock also contends the reason for the shift in terms from "former employer" and "hiring employer" in the first sentence of the Protocol's fee-shifting provision to "prevailing part(ies)" in the second sentence is obvious-- when the former employer sues under the Protocol, it will sue not only the hiring employer but also its former employees hired by the hiring employer. This argument merely explains the use of "part(ies)" rather than "party;" it does not eliminate the use of the word "prevailing" before "part(ies)."

plaintiff's voluntary dismissal without prejudice results in the defending party being the "prevailing party" for purposes of awarding costs and attorneys' fees because the defending party faces the risk the plaintiff will refile, thereby imposing duplicative expenses upon it. USF claims there was no prevailing party because both sides voluntarily dismissed their claims.

In *Spencer*, the Colorado Supreme Court faced a similar dilemma (*i.e.*, having to determine the definition of "prevailing party" in a contract not defining it). There, the plaintiff sued the defendant for breach of their settlement agreement. The jury found the defendant had breached the agreement but awarded no damages. Thereafter, the plaintiff moved for attorneys' fees under the agreement, which awarded fees to the "prevailing party" but did not define the term. The trial court denied the motion because the jury did not award damages and the appellate court affirmed. The Colorado Supreme Court reversed. In doing so, it defined "prevailing party" in a breach of contract case as "the party in whose favor the decision or verdict on liability is rendered" regardless of whether damages are awarded.[10] *Spencer*, 884 P.2d at 332. Because the jury had found in favor of the plaintiff on liability, the court concluded the plaintiff was entitled to

---

[10] The Colorado Supreme Court specifically rejected the standard used for awarding fees in civil rights actions under 42 U.S.C. § 1988, which allows fees to the party applying for such fees if that party was the "prevailing party," *i.e.*, it succeeded upon a significant issue and achieved some of the benefits sought in the lawsuit. *Spencer*, 884 P.2d at 329-30.

fees as the "prevailing party."[11] *Id.*

Applying *Spencer*, neither USF nor Shamrock was the prevailing party because both voluntarily dismissed their claims against each other, *i.e.*, no decision or verdict on liability was rendered in either's favor.[12] While we recognize fee-shifting provisions "generally contemplate . . . that there will be one winner and one loser regarding payment of fees," "in a proper case, the trial court may rule that neither party prevailed and award no fees." *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo. Ct. App. 2003). The Protocol's fee-shifting provision does not prohibit such result. Thus, applying the *Spencer* definition, neither party prevailed and the district court properly denied Shamrock's application for costs and attorneys' fees.[13]

---

[11] The *Spencer* definition is similar to that in Black's Law Dictionary, which defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." Black's Law Dictionary 1144 (7th ed. 1999).

[12] Even though USF did not move for its attorneys' fees, we address whether it prevailed because if it did Shamrock would not be entitled to its fees under the Protocol's fee-shifting provision. Indeed, Shamrock's arguments are based on its belief that USF did not prevail.

[13] In *Wheeler*, the trial court awarded fees to the defendant even though both the plaintiff and the defendant were found to have breached the parties' contract. The Colorado Court of Appeals affirmed, concluding "where both parties have prevailed in part on the question of liability, the trial court is free to determine which is prevailing for purposes of applying a fee-shifting agreement." 74 P.3d at 504. *Wheeler* is inapplicable to this case. The fact both parties voluntarily dismissed their claims against each other does not mean both parties prevailed in part on the question of liability. No liability determination was made

-17-

Of course, *Spencer's* definition of "prevailing party" could be interpreted as applying only to cases (like *Spencer*) in which a determination of liability was actually made. Indeed, the Protocol's fee-shifting provision does not require such a determination to be made in order to decide prevailing party status. Assuming this is so, we are left to define the term where no liability determination has been made, specifically, where the parties voluntarily dismiss their claims against each other.

The closest case on point in Colorado is *Brock*. There, the Brocks filed suit against the Weidners and the Discovery Homeowners Association (DHA) pertaining to the Weidners' plans to build an addition to their home. The Brocks alleged the proposed construction violated the subdivision's restrictive covenants and challenged DHA's failure to prohibit the proposed construction. After the district court denied (1) the Brocks' motion for preliminary injunction (based on its finding the Weidners had proceeded properly in seeking approval for the project and DHA acted in good faith in allowing them to proceed), (2) their jury trial demand (because the action was equitable) and (3) their motion for partial summary judgment (because factual disputes remained), the Brocks moved to voluntarily dismiss their claims with prejudice. The trial court granted the motion but denied the Weidners' request for attorneys' fees under a fee-shifting provision

_____

in this case.

contained in the restrictive covenants which required fees to be awarded to the "successful party." 93 P.3d at 578. The court concluded the issues were "close and difficult." *Id.* (quotations omitted).

The Colorado Court of Appeals reversed, finding the trial court abused its discretion in denying fees. *Id.* In doing so, it did not rely on *Spencer's* definition of "prevailing party" even though it cited to the case for the standard of review. *Id.* at 579. Rather, it looked to determine whether the Weidners had achieved "substantial success." *Id.* It concluded:

> Here, [the Weidners] achieved substantial success in the litigation. Indeed, it is difficult to see how [they] could have been any more successful than they were. [They] succeeded in precluding [the Brocks] from obtaining a preliminary injunction to block construction of the addition. [They] then succeeded in defending against both [the Brocks'] motion for partial summary judgment and [the] demand for a jury trial. [The Brocks'] motion to dismiss acknowledged [the Weidners] success by indicating that further litigation would be counterproductive and that "[t]he injunctive relief sought . . . in this action is moot as the construction sought to be enjoined . . . is now nearly complete. The action culminated in the dismissal with prejudice of all claims against [the Weidners]. Such a dismissal is considered an adjudication on the merits . . . .
>
> [The Weidners] succeeded on every contested issue in the case and the action ultimately was dismissed with prejudice. Therefore, [they] were the successful parties in the proceeding.

*Id.*

Applying *Brock*, neither USF nor Shamrock was the prevailing party because neither achieved "substantial success" (or, using the terms of the

-19-

Protocol, neither party "substantially prevailed"). Although (1) USF successfully defended against Defendants' motion to dismiss, (2) Shamrock's counterclaim against USF was voluntarily dismissed, and (3) Defendants' violations of the Protocol and individual agreements were curtailed, USF failed to obtain a preliminary injunction or any other finding on liability.[14] We recognize the reason USF did not obtain injunctive relief concerning Defendants' violations of the Protocol and the non-solicitation of customers provision in the individual agreements was potentially due to the fact the district court could not conduct an evidentiary hearing prior to these agreements expiring. Nevertheless, USF still could have sought injunctive relief concerning Defendants' violations of the non-disclosure of confidential information restriction in the individual agreements because that restriction did not expire until August/September 2007 (at the earliest).[15] Additionally, the expiration of the Protocol and non-solicitation

_____

[14] Shamrock contends there is no evidence it curtailed any of its activities. However, Shamrock never contested USF's allegation in its motion for voluntary dismissal that one of the reasons it was seeking dismissal was because it had information that "Defendants [had] drastically modified their conduct and curtailed their violative acts upon [USF] filing this litigation." (R. App. at 278.)

[15] USF claimed in its motion for voluntary dismissal of its complaint that the Protocol and individual agreements would expire before a hearing could be held on its motion for preliminary injunction. We agree the Protocol would have expired as it was signed in September 2002 and was effective for three years (until September 2005). However, we disagree that the individual agreements would have expired *in toto*. While the non-solicitation of customers provision expired one year after an employee's termination/resignation, the non-disclosure of confidential information restriction expired, at the earliest, three years after an

provision, while foreclosing injunctive relief, would not have precluded USF from pursuing and obtaining damages for breach of those provisions. Furthermore, unlike in *Brock*, Shamrock's voluntary dismissal of its counterclaim was without prejudice, which is not an adjudication on the merits. *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (citing *Wistrand v. Leach Realty Co.*, 364 P.2d 396, 397 (Colo. 1961)); *Jenkins v. Estate of Thomas*, 800 P.2d 1358, 1359-60 (Colo. Ct. App. 1990).

As to Shamrock, (1) its motion to dismiss was denied, (2) it only avoided defending against USF's request for a preliminary injunction because an evidentiary hearing could not be held prior to the Protocol and the non-solicitation provision in the individual agreements expiring, (3) it did not succeed on its choice of law argument because the district court never ruled on the issue, (4) it and the individual defendants curtailed their violations of the Protocol and individual agreements and (5) although USF voluntarily dismissed its claims against it, it did so without prejudice. While Shamrock asserts USF dismissed its claims to avoid an adverse ruling on the choice of law issue pertaining to the

---

employee's termination/resignation. Because Joseph, Ayotte and Meiris resigned in August/September 2004, only the non-solicitation of customers provision, not the non-disclosure of confidential information restriction, would have expired prior to a preliminary injunction hearing being held. Although USF did not make this distinction in its motion for voluntary dismissal, it did so in its December 20, 2004 motion to set a preliminary injunction hearing.

individual agreements, which would allegedly have resulted in the invalidation of USF's non-solicitation and non-disclosure agreements in Colorado, there is absolutely nothing in the record indicating the court was about to rule on the issue or that such ruling would have been in Shamrock's favor. Moreover, Shamrock did not dispute USF's assertion in its motion for voluntary dismissal that the reasons for its voluntary dismissal were due to the fact Defendants' violations of the individual agreements and Protocol had curtailed and the Protocol and non-solicitation of customers provision would expire before a preliminary injunction hearing could be held. Thus, under *Brock*, neither party was the prevailing party and the court did not err in denying Shamrock's request for costs and fees.

Shamrock's reliance on a number of federal and state court cases for the proposition that a defendant is a prevailing party when a plaintiff voluntarily dismisses its case is unavailing. The cases relied upon fall into two general categories: (1) cases involving an award of attorneys' fees as a condition of a plaintiff's voluntary dismissal of its claims under Rule 41 of the Federal Rules of Civil Procedure and (2) cases involving an award of attorneys' fees under a statute, rule or contract awarding costs and/or attorneys' fees to the "prevailing party." Under the first category, most courts will award fees if the voluntary dismissal is *without* prejudice. *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527-28 (10th Cir. 1997) (holding district court may award fees as a condition of a party's

voluntary dismissal without prejudice under Rule 41(a)(2) but not if the dismissal is with prejudice unless exceptional circumstances are present); *Berthold Types, Ltd. v. Adobe Sys., Inc.*, 155 F. Supp. 2d 887, 891 (N.D. Ill. 2001) (denying award of attorneys' fees to defendant after plaintiff's voluntary dismissal with prejudice under Rule 41(a)(2)). They reason:

> The purpose of awarding fees for a voluntary dismissal under Rule 41(a)(2) is to compensate the defendant for the unnecessary and potentially duplicative expenses of the litigation. Fees are usually awarded for a dismissal without prejudice because the defendant may be forced to defend the claim again. However, [f]ees are not awarded when a plaintiff obtains a dismissal *with prejudice* because the defendant cannot be made to defend again.

*Berthold Types, Ltd.*, 155 F. Supp. 2d at 891 (citations and quotations omitted). Because Shamrock did not seek its fees as a condition of USF's voluntary dismissal under Rule 41(a)(2), but rather under a contractual fee-shifting provision, the first category of cases is not controlling.

The second category of cases is more on point because they involve statutes, rules or contracts utilizing the term "prevailing party," the same language used in the Protocol's fee-shifting provision. In these cases, the courts hold a party is a "prevailing party" when the claims against it are voluntarily dismissed. *See, e.g., Cantrell v. Int'l Bhd. of Elec. Workers*, *AFL-CIO, Local 2021*, 69 F.3d 456, 458 (10th Cir. 1995) (en banc) (holding a defendant is a "prevailing party" under Rule 54(d) of the Federal Rules of Civil Procedure when

-23-

a plaintiff voluntarily dismisses its complaint, whether that dismissal is with or without prejudice); *Franklin Fin. v. Resolution Trust Corp.*, 53 F.3d 268, 273 (9th Cir. 1995) (applying Oregon law and holding a defendant is a "prevailing party" under a contractual fee-shifting provision and an Oregon statute when a plaintiff voluntarily dismisses its action under Rule 41(a)(1) of the Federal Rules of Civil Procedure); *Rushing v. Carribean Food Prods.*, 870 So.2d 953, 954-55 (Fla. Dist. Ct. App. 2004) (finding defendant is the "prevailing party" under a contractual fee-shifting provision when a plaintiff voluntarily dismisses its complaint pursuant to state court rule). However, none of these cases apply Colorado law and there is no indication Colorado would rule similarly. Indeed, in *Spencer*, the Colorado Supreme Court expressly declined to apply the definition of "prevailing party" for purposes of awarding fees under 42 U.S.C. § 1988 to a contractual fee-shifting provision employing the same language. 884 P.2d at 329-30. More importantly, none of the cases relied upon by Shamrock address the situation in this case – where both parties voluntarily dismiss their claims against each other.[16]

Even assuming the above cases applied here, we conclude the court did not

---

[16] Shamrock contends it never desired to be in litigation with USF and only filed its counterclaim against USF as a defensive tactic. Whatever Shamrock's intentions may have been, the fact remains it filed a counterclaim against USF and later voluntarily dismissed it.

err in denying Shamrock its costs and attorneys' fees. Applying the general proposition that a defendant is a prevailing party when a plaintiff voluntarily dismisses its complaint, both USF and Shamrock would be considered the prevailing party because both parties voluntarily dismissed their claims against the other. However, the Protocol's fee-shifting provision does not allow for such result. Under its plain language, either the former employer, hiring employer or neither is the prevailing party, not both parties. This is consistent with contractual fee-shifting provisions in general. *See Wheeler*, 74 P.3d at 503 ("[Contractual fee-shifting provisions are] not intended to result in each side paying the other's fees. Instead, these provisions generally contemplate that the prevailing party will be entitled to recover its attorney fees and that there will be one winner and one loser regarding payment of those fees.").

The district court did not err in denying Shamrock's application for costs and attorneys' fees under the Protocol's fee-shifting provision.

**AFFIRMED**.

**ENTERED FOR THE COURT**

**Terrence L. O'Brien**
Circuit Judge

-25-